## Chicago Union Traction Co. et al. v. Benjamin E. Stanford, an Infant, by his Next Friend.

1. JUDGMENTS—*When Joint, Can Not Be Sustained as to One Only.*—A joint judgment can not be sustained as to one unless it be sustained as to each and all of the parties.

· 2. CORPORATIONS—*Company Owning Franchise Is Responsible for Negligence of Its Lessee.*—A company owning railway tracks and the franchise thereof is responsible for the negligent operation of the road by its lessee.

3. STREETS—*Law Recognizes No Favorites in Their Use.*—A public street is a passage open to all the citizens of the state to go and to return, pass and repass at their pleasure. In the use of a public street the law recognizes no favorites. Subject to the law of the road, no one man or body of men has a superior right upon and in the street as against the general public.

4. PRACTICE—*In Actions of Tort.*—In actions of tort the plaintiff is not compelled to prove all the allegations of his declaration. If he prove enough of such allegations to make a cause of action, he need do no more.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Mr. Justice ADAMS, dissenting. Opinion filed November 13, 1902.

On October 23, 1899, the appellee (plaintiff below), a minor, became a passenger on a car of the Chicago Union Traction Company, which company was operating a street car cable line on Milwaukee avenue, in the city of Chicago, under a lease from the West Chicago Street Railway Company.

The injury occurred at the junction of Elston avenue and Milwaukee avenue. Milwaukee avenue and the cable tracks thereon run northwest and southeast. The car tracks on Elston avenue at its intersection with Milwaukee avenue run north and south. The tracks on Elston avenue at their intersection with the Milwaukee avenue tracks curve to the southeast and connect with the Milwaukee avenue tracks.

The plaintiff boarded the Milwaukee avenue train at Hal-

sted street, and the injury occurred when the car had traveled
in a northwesterly direction to the intersection of Milwau-
kee avenue and Elston avenue, a little before six o'clock in
the evening. The train upon which plaintiff rode consisted
of three cars beside the grip and combination car. They
were all open cars. Plaintiff boarded the fourth and last
car of the train, at the rear end of the car. This car was
crowded. The rear platform was also crowded, and plaint-
iff stood upon the footboard at the rear platform. There
were other people standing on the footboard. The plaint-
iff stood with his back to the platform of the car, facing
north. A car operated by the Consolidated Traction Com-
pany on Elston avenue was coming from the north. A
large wagon heavily loaded and drawn by two horses also
came from the north down Elston avenue. But just as the
team arrived near the street car tracks on Milwaukee
avenue, the Milwaukee avenue train came up from the
southeast and stopped to take on and let off passengers,
blocking the whole crossing of Elston avenue. The driver
stopped his team to let the Milwaukee avenue train pass,
and in order to get his horses further from the train, pulled
their heads around to the southeast, thus bringing them
onto the west track on Elston avenue, upon which the
Elston avenue car had come from the north, and about
parallel with the tracks on Milwaukee avenue. The
horses were then close to the Milwaukee avenue train,
their heads being from two to four feet from the near-
est rail of the Milwaukee avenue track, upon which the
Milwaukee avenue train was standing. The Elston ave-
nue car, while the team was standing there, moved up
until it got very near the horses. Both trains started
up. The driver of the team called to the motorman
on the Elston avenue car to stop, but the latter kept
on moving his car until the fender pushed against the
horses, when they turned toward the Milwaukee avenue
train. The driver tried to pull them away from the Mil-
waukee avenue train, but could not do so on account of
the proximity of the Elston avenue car. The horses reared

and turned to their right, throwing the tongue of the wagon into the hind end of the rear car. The conductor of the rear Milwaukee avenue car stated that he noticed this wagon, or tongue of the wagon, standing right close to the car, and that there was a number of passengers on the footboard; he kept watching out to see that none of them got hurt. As the train moved along the conductor pulled a drunken man off the footboard into the car, and called out " Look out for the wagon !"

The plaintiff did not see the wagon, but when he heard the conductor call out " Look out for the wagon," he tried to step up upon the platform, but could not on account of the crowd on the platform. Plaintiff's left leg was broken by the tongue of the wagon, which struck him and the car with such force that the tongue was broken.

JOHN A. ROSE and LOUIS BOISOT, attorneys for appellants; W. W. GURLEY, of counsel.

JESSE COX and WALTHER & LANAGHEN, attorneys for appellee.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

The appeal in this case is by the West Chicago Street Railroad Company and the Chicago Union Traction Company, one the owner and the other the lessee and operator of the Milwaukee avenue line, and by the Chicago Consolidated Traction Company, which was operating the Elston avenue line. As the judgment is joint, it can not be sustained as to one unless it be sustained as to each and all of the defendants. Claflin v. Dunne, 129 Ill. 241.

There is in this record ample evidence, which, if believed by the jury, sustains the verdict as against the Chicago Consolidated Traction Company. The testimony tends to show that the car of the latter company came south on Elston avenue on the west track in the rear of the wagon, which had turned to the west out of the track in which the car was traveling, and then continued south until stopped by the stationary Milwaukee avenue train. To get his

horses further from the latter train, the driver pulled them over to the southeast, thus bringing them upon the west track of Elston avenue. The Milwaukee avenue tracks lie northwest and southeast; the Elston avenue tracks lie north and south. As the latter tracks pass into Milwaukee avenue they curve to the east and run into and join the Milwaukee avenue tracks. The wagon stopped in this wedge of the tracks. The horses were standing from two to four feet from the rails of the Milwaukee avenue track when that train started up. Instead of waiting until that train had passed the wagon, thus permitting the latter a clear passage to the south, the motorman on the Elston avenue car, when the train moved, started his car, and continued going until his fender struck the horses. They became alarmed and naturally swung to the right, thus throwing the end of the tongue of the wagon into the rear car of the passing train, and injuring appellee.

The liability, if any, of the West Chicago and of the Union Traction Company is identical. A company owning railway tracks and the franchise thereof is responsible for the negligent operation of the road by its lessee. C. & E. Ry. Co. v. Meech, 163 Ill. 305.

Appellants claim that the evidence does not support the verdict as to these two latter named defendants; that the only specific act of negligence charged against them is the running of the Milwaukee avenue train recklessly and carelessly at a rapid rate of speed. The evidence tends to show that before the conductor of the rear car of the Milwaukee avenue train, standing upon the rear platform of his car, rang the bell for the train to proceed, he saw the Elston avenue car and he also saw the position of the horses and wagon. He must have seen that this team was " pocketed " by the simultaneous movement of his train and that of the Elston avenue car, and if startled might endanger his passengers. He appreciated that his passengers were to be put in some danger by then starting the train, for he was watching the wagon tongue, dragged one man from the footboard into the car, and called to the others to " Look

Chicago Union Traction Co. v. Stanford.

out for the wagon." The thing he feared happened, and as a result the appellee is maimed for life. It was the duty of that conductor to use the utmost care consistent with the practical operation of his road for the safety of his passengers. When he saw this danger menacing his passengers he should have stopped his car until the wagon was removed. His conduct indicated that he thought he had "the right of way," or, as counsel put it, "if this be negligence, it is impossible to run street cars in the streets of the city of Chicago without constantly being guilty of negligence; since if a car is only to be run when the motorman sees the street entirely clear on both sides of the track, the cars will have to remain permanently in the car barns." A public street is a passage open to all the citizens of the state to go and to return, pass and repass at their pleasure. In the use of a public street the law recognizes no favorites. Subject to the law of the road, no one man or body of men has a superior right upon and in the street as against the general public. Morse v. Sweenie, 15 Ill. App. 486. The Union Traction Company in this case was a common carrier of passengers, and was subject to the penalty of having a judgment entered against it, if it failed to exercise the high degree of care demanded by such relation.

The speed of a car is rapid or otherwise, as its known surroundings indicate. Under certain conditions three miles an hour may be rapid; under other conditions thirty miles per hour may not be inconsistent with due care. By the time the rear end of the last car reached the wagon-tongue the train had attained such a speed that the conductor was able to drag but one passenger from the foot-board to a place of safety, and the shock of the impact broke the tongue of the wagon. This question of speed was submitted to the jury, and they, by their verdict, have found it excessive.

The allegation of the declaration as to the West Chicago Company and the Traction Company is that they "recklessly and carelessly drove and operated a train of cars * * * at a rapid rate of speed." In our opinion the

allegation of " a rapid rate of speed " is separable from the allegation of " recklessly and carelessly drove and operated." In actions of tort the plaintiff is not compelled to prove all the allegations of his declaration.  If he prove enough of such allegations to make a cause of action, he need do no more.  City of Rock Island v. Cuinely, 126 Ill. 408, 411; City of Joliet v. Johnson, 177 Ill. 178.

Under the facts, as the jury from the testimony were entitled to find them, we think that the verdict is supported by the evidence.

The judgment of the Superior Court is affirmed.

ADAMS, J., dissenting.

I can not concur in some of the views expressed in the foregoing opinion, or the conclusion reached.  The sole allegation of negligence of the defendants, the West Chicago Street Railroad Company and the Chicago Union Traction Company, the former the owner, and the latter the lessee of the Milwaukee avenue line, is as follows:

" The defendants, the West Chicago Street Railroad Company and the Chicago Union Traction Company, and each of them, and their servants, totally disregarding their duty in that behalf, recklessly and carelessly drove and operated a train of cars upon their said railroad tracks, in said Milwaukee avenue, at a rapid rate of speed, in passing along said Milwaukee avenue, at and over where said Elston avenue intersects with said Milwaukee avenue, aforesaid."

The language used must be understood in its ordinarily accepted meaning, and certainly no intendment can be indulged in in favor of the party making the allegation. The allegation that defendants " recklessly and carelessly drove and operated a train of cars upon their said railroad tracks," is the same, in substance, as if the language were *the defendants were reckless and careless, in that they operated a train of cars upon their said railroad tracks on said Milwaukee avenue at a rapid rate of speed.*  Manifestly, as I think, the complaint is that the defendants, in passing along said Milwaukee avenue, at, etc., operated a train of

Chicago Union Traction Co. v. Stanford.

cars at a rapid rate of speed, and, in so doing, they acted recklessly and carelessly. The averment is not that they so carelessly and negligently operated the train that, by reason thereof, it collided with the wagon, and it can not be so understood. The allegation was notice to the defendants that the plaintiff would rely on proof that they drove and operated the train, at the place in question, at a rapid rate of speed. I dissent from the view that the allegation may be physically cut in two, that the words, " at a rapid rate of speed," may legally be eliminated, and also from the view that the word " rapid," which Webster defines " very swift or quick; moving with celerity; fast," can be held, in its application to a train, to mean one thing under some circumstances and another under other circumstances. There is absolutely no evidence that the Milwaukee avenue train was moving at a rapid rate of speed at the time of the accident. Olaf Soema, the driver of the wagon, a witness for appellee, was examined on direct, and answered as follows :

Q.    " How fast, about, was the Milwaukee avenue train going ? "    A.    " Oh, it was not going very fast."

E. A. Papenfus, conductor of the Milwaukee avenue train, a witness for defendants, testified :

" As I ran northward in Milwaukee avenue, I saw the team standing there, facing Milwaukee avenue, south of the Elston track.    It was on the north side of the Milwaukee avenue track, about four feet off from it.    We passed by there slowly.    We had the bell from the rear to stop. We slowly crossed the track and stopped to let off passengers.    We were going to stop at the further crossing at Elston avenue, at the proper place."

The foregoing is all the evidence of the speed of the train, which being so, it may be said, as matter of law, there was no negligence of the said owner and lessee as alleged in the declaration. I am also of opinion from the evidence, (and waiving the pleading,) that no actual negligence of the West Chicago Street Railroad Company, or of the Chicago Union Traction Compaay, was proved, and that the judgment should be reversed and the cause remanded.