PETER M. MARK, Administrator, *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

June 20, 1883.

Contributory Negligence — Bewilderment Caused by Negligence of Railway Co.—Where one, without his own fault, is, through the negligence of another, put in such apparent peril as to cause in him terror, loss of self-possession, and bewilderment, and, as a natural result thereof, he, in attempting to escape, puts himself in a more dangerous position and is injured, the putting himself in such more dangerous position is not, in law, contributory negligence that will prevent him recovering for the injury.

Appeal by plaintiff from an order of the district court for Hennepin county refusing a new trial, after a trial before *Young*, J., and a jury.

*Arthur J. Shores*, for appellant.

*Benton & Roberts*, for respondent.

GILFILLAN, C. J.   The action is by plaintiff, as administrator, for causing, through negligence, the death of his intestate, one Hemberg. In April, 1882, Hemberg was employed at a planing-mill at the corner of Fifth street and Second avenue north-east, in the city of Minneapolis.   At the corner of said avenue and Fourth street was a furniture factory.   Along and near the planing-mill and factory, and between them and the avenue, the defendant, for their accommodation, and to receive from and deliver to them furniture and lumber, had laid a side-track from its main track, the expense of laying which was borne jointly by the defendant and the owners of the factory and mill.   The planers in the mill stood about 20 feet from this side-track.   The boards coming out of the planers came within from 6 to 10 feet from it.   The planed lumber, as it was taken from the planers, was usually piled on the opposite side of the side-track, and between it and the avenue.   There appear to have been three planers, and at each a man was employed in receiving the boards as they came from it, carrying them across the side-track, and piling them on the side opposite the mill.   One of these men was Hemberg.   The pile to

which he was carrying boards at the time he was killed was about four feet from the track, and was lengthwise the track. One witness testified that each of these men had to cross the track about every second minute during the day; others appear to have been employed near and on both sides of the track between Fourth and Fifth streets. And there also appears to have been more or less lumber piled on each side of and near the track. One witness testified that there was a great deal of noise about the mill; that the noise "kills the sound of the cars." The defendant usually put a car in on this side-track by "kicking;" that is, by giving it an impetus with an engine, and then uncoupling and letting the car run in with the impetus thus given it. Cars were sent in that way four or five times a day, but it does not appear that it was done at any stated times; whenever the factory or mill was to receive or deliver a load, a car was sent in.

On the occasion of Hemberg's death a car was "kicked" in, and, he being on the track, it struck and killed him. There was evidence from which the jury might find that this car was sent in at an unusual rate of speed—as high as nine miles an hour. It had no means of giving a signal of its approach, except by the calling out of the brakeman upon it. He did call out as the car approached the place where Hemberg was at work, and other persons also appear to have called out, and it may fairly be concluded from the evidence that Hemberg heard the shouting and saw the car when it was very near to him. As to his action after he saw it, there is some disagreement in the evidence. One witness testified that he had started to cross the track, carrying a board, and, as he was about to step on the track, he saw the car, dropped the board, and started across in front of the car, and it struck him. According to another witness, he had carried the board across, put one end of it on the pile, and attempted to recross, going with his back in the direction of the car, and was struck while recrossing. Upon the evidence, it was a case for the jury to determine, both as to the negligence of the defendant and as to negligence on the part of Hemberg.

The charge of the court on the subject of negligence on the part of Hemberg, while in a proper case it might be correct, was, in view of the circumstances, incorrect, because it ignores any consideration of

the effect which the defendant's negligence (if the jury should find it guilty of negligence) may have had on Hemberg's mind, and on his ability to determine at once justly what was the safest thing for him to do, when, through such negligence, he found the car almost upon him. We quote only one passage from the charge, the remainder of it, on the matter of negligence by Hemberg, being of the same general tenor. After referring to the testimony of the witness whose testimony we have first mentioned above, it proceeds: "Now, if that were true,—if you should find that version to be true,—I should charge you, as a proposition of law, that that was negligence on his part; that it was a careless act for him, no matter what may have been his mental condition—though he may have been frightened— the act itself would have been a careless act. To attempt to run across a railroad track when there was a car approaching would be carelessness of itself, and it would be contributory negligence which would defeat the recovery." Hemberg was at work receiving boards from the planer, (very close to the track on one side,) carrying them across the track and piling them very close to it on the other side, and for that purpose crossing the track as often as every second minute during the day. So far as appears, he had a right to be so at work. His employers occupied, rightfully, it is to be presumed, the land on both sides of the track,—on one side for their planing-mill, and on the other side for piling their lumber. Others, as well as he, were at work along-side of and near the track, crossing and recrossing it at all times during the day. It was the duty of defendant to run its cars with reference to this state of things, and also with reference to to the fact that it ran them at irregular times. If the jury had found, as they might from the evidence, that, through defendant's negligence, the unexpected, sudden, and rapid approach of the car placed Hemberg, without his fault, in a position of apparent peril, requiring instant action to escape, and that the peril and shouting by the brakeman and others frightened and bewildered him, so that, for the moment, he was incapable of deliberating and choosing the safest course to pursue, the defendant cannot allege it as negligence in law on his part, so as to prevent his recovery, that he adopted an unsafe course, if it were a natural result of the fright and bewilderment so

caused by defendant's negligence, such as might occur to one acting with ordinary prudence. To allow defendant to do so would be like permitting one to take advantage of his own wrong. *Galena & C. U. R. Co.* v. *Yarwood,* 17 Ill. 509; *Indianapolis, etc., Ry. Co.* v. *Carr,* 35 Ind. 510; *Buel* v. *N. Y. C. R. Co.,* 31 N. Y. 314; *Coulter* v. *Am. M. U. Exp. Co.,* 5 Lans. 67; *Johnson* v. *West Chester & P. R. Co.,* 70 Pa. St. 357. If the jury had been satisfied from the evidence, as they might have been, that the car was run in negligently, that it was not negligence in Hemberg not to see the car till it was close upon him, and, if he then ran upon the track, that his doing so was through terror and loss of self-possession caused by defendant's negligence,—his doing so was not his negligence.

Order reversed, and new trial ordered.