PETER BEANSTROM *vs.* NORTHERN PACIFIC RAILROAD COMPANY.

May 12, 1891.

Railway—Omission of Signals at Street-Crossing.—Evidence *held* sufficient to justify the jury in finding that the defendant was negligent in running a train at a high rate of speed over a village street-crossing, without giving signals of its approach sufficiently near the crossing to be heard by travellers.

Same—Duty of Traveller on Highway—Question for Jury.—It was also sufficient to justify the jury in finding that plaintiff, before attempting to cross the railway, looked and listened for approaching trains; and whether, under the circumstances, he ought to have taken any additional precaution was, on the evidence, a question for the jury.

Appeal by defendant from an order of the district court for Otter Tail county, *Searle,* J., presiding, refusing a new trial after verdict of $700 for plaintiff, in an action for personal injuries at a highway-crossing of defendant's railroad.

*John C. Bullitt, Jr.,* and *Tilden R. Selmes,* for appellant.

*Chas. L. Lewis,* for respondent.

MITCHELL, J. 1. The only question in this case is whether the evidence justified the jury in finding that the defendant was guilty of negligence, and that the plaintiff was not guilty of contributory negligence. We have no doubt as to the sufficiency of the evidence to justify the conclusion that the defendant was negligent. A careful perusal of it satisfies us that it was sufficient to warrant the jury in finding that the train which caused the injury passed the street crossing at the rate of 25 or 30 miles an hour, without giving any signal of its approach, except blowing a whistle at the "whistling-post," three-quarters of a mile west of the crossing, and again at the switch, which was about 115 rods or 1,900 feet west of the crossing. The evidence that no whistle was blown except at these points, and that no bell was rung, was not all negative testimony of the usual kind; for some witnesses testified that they heard the whistles at the points referred to, but did not hear any bell or whistle at any other time or

place, except the blast given just as the engine struck plaintiff's wagon on the crossing.   Had any other signals been given, they would have been more likely, in view of the reduced distance, to have heard them than those which they did hear.   When it is considered that this crossing was on the principal thoroughfare of a village of 300 inhabitants, and that the opportunities of seeing or even hearing trains approaching from the west were greatly obstructed by a natural rise of the ground, as well as by buildings, and also by box-cars and piles of wood and ties, with which the railway company occupied a great part of its right of way, (200 feet wide,) we think it was fairly a question for the jury whether reasonable regard for the safety of those travelling the street would not have required some further cautionary signals nearer the crossing, especially in the case of a train which dashed through the village at so high a rate of speed without stopping.

2. While the evidence bearing upon plaintiff's contributory negligence is not so strong in favor of the verdict as that bearing upon defendant's negligence, yet we think it also fairly presented a question for the jury.   There were three railway tracks at this crossing,—the main track, and a side track on either side of it,—the southerly one being eight feet distant from the main track.   The railroad ran east and west, while the street (Main street, in the village of New York Mills) ran north and south.   South of the crossing is a hill, the top of which is some 560 feet, and the bottom some 290 feet, from the main track.   From the bottom of the hill to the crossing the street is comparatively level.   The plaintiff was going north, and was driving a span of horses attached to an ordinary lumber wagon, in which were riding four other men.   He trotted his team down the hill.   Whether he slowed them to a walk at the foot of the hill, or in front of a printing-office, 50 feet distant from the crossing, is not entirely clear to us; but it is certain that for a distance of at least 50 feet before reaching the crossing the team was on a walk. The evidence would justify the jury in finding that plaintiff, and those in the wagon with him, from the time they reached the top of the hill until they reached the crossing, and when they were upon the south side track, continuously looked and listened for approaching trains,

and neither saw nor heard any until after they had passed the south side track, and were entering upon the main track. The horses sprung forward, but the train struck the rear of the wagon before it cleared the track. It does appear that between the top of the hill and the crossing there were a number of spaces between intervening obstructions, through which a train, or at least the tops of the cars, approaching from the west, could be seen from the street. It is argued from this that plaintiff could not have looked, as he testified he did, else he would have seen the train. This does not necessarily follow, because a train was visible only from certain points, and it might not have been in his line of vision when plaintiff passed those points. It is also quite probable that the whistle was blown at the whistling-post and at the switch, while plaintiff was driving down the hill, and, if so, the great distance, together with the noise of the wagon, might fully explain why he did not hear it. Upon the evidence, it was a question for the jury to say whether the plaintiff did all that an ordinarily prudent man would do, unless a court is prepared to say, as a matter of law, that under the circumstances he ought to have stopped his team entirely before entering upon the crossing. While the decisions of this court are uniform to the effect that, under ordinary circumstances, it is the duty of a person to look and listen for approaching trains before venturing to cross a railroad, yet we have never held that, having done so, he is bound, as a matter of law, to stop his team in order to ascertain if possibly a train is approaching, which he had not seen or heard. See *Shaber* v. *St. Paul, M. & M. Ry. Co.*, 28 Minn. 103, (9 N. W. Rep. 575;) *Kelly* v. *St. Paul, M. & M. Ry. Co.*, 29 Minn. 1, (11 N. W. Rep. 67.) It would only be under very peculiar and special circumstances that reasonable care would require so unusual a precaution. Having looked and listened for a distance of several hundred feet, and having checked up his horses to a walk for that purpose, on approaching the track, we think it was a question for the jury to say whether, under all the circumstances, plaintiff ought to have taken any additional precaution before attempting to make the crossing.

It is urged that when he discovered the train he ought to have backed his team or turned them around, instead of then attempting to

cross. But this was also for the jury. The time and space in which to do this was so extremely limited that there might have been more risk in attempting it than in going ahead. Moreover, when a person about to drive across a railway is suddenly confronted with danger from an approaching train, he has very little time in which to collect his thoughts, and decide what is best to do. See *Mark* v. *St. Paul, M. & M. Ry. Co.*, 30 Minn. 493, (16 N. W. Rep. 367;) *Weyl* v. *St. Paul, M. & M. Ry. Co.*, 40 Minn. 353, (42 N. W. Rep. 24.)

Order affirmed.