IDA J. NEWSTROM, Administratrix, v. ST. PAUL AND DULUTH RAILROAD COMPANY.[1]

May 10, 1895.

Nos. 9099—(34).

Accident at Crossing—Contributory Negligence.
Held that, upon the evidence, the question of the contributory negligence of plaintiff's intestate was for the jury.

Death by Wrongful Act — Evidence of Negligence — Admission of Deceased to Wife.
Evidence tending to prove, by the experience and observation of the witness, that on other occasions, when the train was being backed down towards the highway crossing in the same manner as on the occasion of the accident, travelers, approaching the crossing in the same manner as the deceased, could not, or might not, hear the approaching train until they were almost at the crossing, held competent upon the question of the negligence of the deceased.    Upon the trial the defendant called the plaintiff, who was the widow, of the deceased, as a witness, and asked her if her husband, in his lifetime, had not stated to her that the crossing was a dangerous one.    Held properly excluded, under G. S. 1894, § 5662.

Action in the district court for Ramsey county, by Ida J. Newstrom, as administratrix of the estate of Elias Newstrom, deceased, against St. Paul and Duluth Railroad Company to recover damages for the death of the intestate.    From an order, Egan, J., denying a motion for a new trial, after a verdict in favor of plaintiff for $5,000, defendant appealed.    Affirmed.

[1] Reported in 63 N. W. 253.

Appellant's first assignment of error referred to in the opinion was that the court erred in refusing the request of appellant that a verdict be directed in its favor upon all the evidence. Appellant's second request referred to in the opinion was as follows: "There is no statute of this state which required the company to ring its bell or sound its whistle while the train was passing over the railroad crossing in question or to ring its bell or sound its whistle continuously from a point 80 rods distant to the crossing."

*J. D. Armstrong* and *Bunn & Hadley*, for appellant.

*John B. & E. P. Sanborn*, for respondent.

MITCHELL, J. This was an action to recover damages for the death of plaintiff's husband, who was killed by a train on a highway crossing at Dellwood, on defendant's road from White Bear to Stillwater.

The negligence of defendant is not seriously questioned. The crossing is a peculiarly dangerous one. On the east side of the crossing the railroad runs through a cut, and on the north side of the railroad is a bluff or hill, which prevents travelers on the highway approaching from that direction from seeing a train coming from the east until within a few feet of the crossing. The train in question (a passenger one) was backing down from Mahtomedi at the rate of 20 miles an hour, with the coaches in front of the engine, running on a down grade, without much steam, and hence making comparatively little noise, and no signals of its approach were given (as the evidence tended to show) within 800 feet of the crossing. Such a state of facts would establish a clear case of negligence on part of the defendant.

The main contention of the defendant is that the evidence conclusively shows that the deceased was guilty of contributory negligence in not looking and listening for approaching trains before attempting to cross the track. It appears that deceased lived at White Bear, two or three miles distant, had frequently driven over the road, and was familiar with the crossing, and on one occasion had remarked that it was a dangerous one. He was coming from the north in a one-horse wagon, and sat on the front seat driving, while two women occupied the back seat. The horse was a gentle one, which was not afraid of the cars, and there is no evidence

that it became unmanageable or got out of the control of the deceased. As both of the women were also killed, there was no testimony from any occupant of the wagon as to how the accident occurred or as to the conduct of the deceased. Heckle, who resided near the highway and about 450 feet north of the crossing, and Breen, who was about 60 feet south of it, were the only eyewitnesses of the accident. Heckle saw deceased when he drove past his house, and says the deceased and the women were engaged in conversation, which they continued after they passed; that the horse was going at a slow or jog trot of about four miles an hour, which continued without stop until the collision occurred; that he saw the deceased from the time he passed his house until the accident happened, and that he did not see him look up or down the track during that time, except that once, when he was about 60 feet from the crossing, he saw him turn his head around towards the east. It does not appear, however, that there was anything special to attract his attention to the action of the deceased until he saw that an accident was imminent, when he says the deceased, when he got on the track, seemed as if he was trying to cramp his horse around to the right. It should be stated that the railway west of the crossing was in plain view from the highway. Breen's attention was not particularly directed to the deceased until he was within 25 or 30 feet of the crossing, when, being aware of the approach of the train, and seeing that deceased did not seem to realize the danger, he attempted to attract his attention so as to warn him of it, but failed to do so. When asked whether he saw deceased look up or down the track, he said: "I can't say that I did. Just before he got to the track he looked; that is, when he realized there was danger I saw him glance around." He also testified that deceased "didn't seem to realize that there was danger until his horse's head was on the track, and then I saw him stop and jerk his right rein," but it was then too late. It is quite evident that the time that elapsed after Breen's attention was attracted to the deceased, and before the accident occurred, was infinitesimally brief,—not more than a very few seconds. It also appears that there was no point on the highway from which deceased could have had a view of the railroad, so as to see an approaching train from the east, until he emerged from behind the bank.

or bluff, when his horse's head would be within a short distance of the track,—six to twelve feet, according to the testimony of some witnesses.   There is also evidence from which the jury might have found that, even by the reasonable exercise of his sense of hearing, the deceased could not (in the absence of signals) have heard the train until both he and it were in close proximity to the crossing, especially as the train was backing down with comparatively little noise, and the wind was blowing from the northeast. The evidence, however, does show that there was a point after he had emerged from behind the bluff, and before his horse entered upon the track, where, if deceased had come to a full halt and looked up the track, he could have seen the train; but unless we can hold, as a matter of law, that not to do so was, under the circumstances, negligence, we think the question of his contributory. negligence was for the jury.   There is no presumption that he was negligent.   On the contrary, the burden was on defendant to affirmatively prove that he was.   If, in the absence of any opportunity to look for an approaching train until he got from behind the bank or bluff and within a few feet of the crossing, the deceased diligently used his sense of hearing in listening for an approaching train, and heard neither signals nor the noise of moving cars, it cannot be held that it was per se negligence not to come to a standstill when his horse's head was at most only a few feet from the track, and look for an approaching train, when the act of crossing it was only a matter of a very few seconds.

While a traveler cannot omit to exercise proper diligence in "looking and listening," in reliance upon the railway company doing its duty in giving signals, yet we think that, under the circumstances, the deceased, in regulating his own conduct at this particular time, might have some regard to the presumption that the defendant would perform its duty.   This court has endeavored to hold travelers, when about to go upon a railroad crossing, to the absolute duty of exercising their senses to the extent of their reasonable opportunities in looking and listening for approaching trains.   But every case must depend, to a certain extent, upon its own peculiar facts; and we have never laid down a hard and fast rule that, under all circumstances, they must secure a view of the track before attempting to cross, as, for example, by getting

out of a vehicle and walking ahead of it in order to look up and down the track. We doubt whether the evidence in this case conclusively shows that the deceased did not look up the track after he got from behind the obstruction, but, even if it does, we could not hold, as a matter of law, that this constituted negligence. We admit that there is considerable evidence tending to show that deceased was somewhat heedless of the known dangers of this crossing, but, after all, it was a question for the jury. This disposes of defendant's first and second assignments of error; for the request referred to in the second assignment in effect asked the court to charge the jury that the failure of the deceased to look up the track, after he passed the obstructions and reached a point within a few feet of the crossing, would, as a matter of law, constitute negligence.

2. Defendant's second request to charge was properly refused, because the first part of it was not a correct construction of the statute. Pen. Code, § 343 (G. S. 1894, § 6637). The latter part of the request, standing alone, would have been correct.

3. If the testimony of the witness Milner, referred to in the fifth assignment of error, had been to the effect that the defendant had, on other occasions, been guilty of similar acts of negligence in failing to ring a bell or sound a whistle, it would have been incompetent. But, as we understand the testimony, it merely tended to prove, by the experience and observation of the witness on other occasions, that, when a train was being backed down in this manner, such signals, when given, could not, or might not, be heard by a traveler on the highway approaching the crossing. For this purpose we think the evidence was competent, as bearing upon the question of the negligence of the deceased. The trial court may not have stated accurately the ground upon which the evidence was admissible, but that is immaterial as long as it was in fact so.

4. The defendant called the plaintiff herself as a witness, and asked her if the deceased in his lifetime had not often stated to her that this was a bad or dangerous crossing. The court excluded the evidence, on the ground that it is not competent for any party to an action, or interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a

deceased party or person relative to any matter at issue between the parties. G. S. 1894, § 5660. It may, at least, admit of doubt whether this statute applies to a case where the party is called to give testimony against his interest, but we think the evidence was properly excluded, under G. S. 1894, § 5662, which provides that neither husband nor wife can, either during marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage. We have held that this prohibition is not confined to communications on subjects of a confidential nature, but extends to all communications, except, perhaps, those which from their very nature were evidently intended to be communicated to others. Leppla v. Minnesota Tribune Co., 35 Minn. 310, 29 N. W. 127. The fact that the husband is dead does not alter the rule.

Order affirmed.