# T. P. ANDERSON, AS ADMINISTRATOR OF THE ESTATE OF CARL HEDLUND, DECEASED v. GREAT NORTHERN RAILWAY COMPANY AND ANOTHER.[1]

October 29, 1920.

No. 21,911.

**Railway — accident at highway crossing — question for jury.**

1. Under the evidence the alleged negligence of defendant in the operation of its train over a public highway crossing was a jury question.

**Same — decedent guilty of contributory negligence.**

2. The evidence showed that plaintiff's intestate, in attempting to drive his automobile over a railroad crossing, was struck by a train running at a speed of about 35 miles an hour; that after he reached a point in the road 58 feet from the railroad track he had an unobstructed view of the track for a distance of 1,320 feet in the direction from which the train was approaching; that the collision took place in the afternoon of a clear day; that there was a slight upward grade in the road and its surface was sandy, and that there was nothing to distract the attention of the deceased from the oncoming train. *Held* that as a matter of law he was guilty of contributory negligence.

Action in the district court for Roseau county to recover $7,500 for the death of plaintiff's intestate. The case was tried before Watts, J., who at the close of the testimony denied defendants' motion for a directed verdict, and a jury which returned a verdict for the amount demanded. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Reversed and judgment for defendants directed.

*M. L. Countryman* and *A. L. Janes,* for appellants.

*H. O. Chommie,* for respondent.

LEES, C.

This is an appeal from an order denying defendants' alternative motion for judgment notwithstanding the verdict or for a new trial in an

[1]Reported in 179 N. W. 687.

action brought to recover for the death of Carl Hedlund, plaintiff's intestate, in a collision between an automobile and a locomotive engine at a highway crossing.

On June 25, 1919, at about 3 o'clock in the afternoon of a clear, sunny day, Hedlund was driving a Ford car southerly along a public highway which crosses defendant's railroad track about 2½ miles east of the village of Greenbush in Roseau county, this state. The road on which he was driving ran through a wooded country and crossed the railroad practically at right angles. The right of way was 100 feet wide and was bordered by trees and brush. Hedlund had driven over the crossing in the forenoon in going to a farmhouse a few miles to the north, and was returning when the accident occurred. A traveler approaching the crossing from the north obtains a partial view of the railroad track on reaching a point 72 feet north of the track, and an unobstructed view of it on reaching a point 58 feet north of the center line of the track. The train came from the west. After it reached a whistling post 1,320 feet west of and until it passed over the crossing, it would be in plain sight of a person 58 feet north of the crossing. The engineer had a clear view of the crossing after the train reached the whistling post. He testified that he first saw the automobile when its hood appeared to come out on his side of the engine at the instant of the collision. The fireman was on the deck of the engine attending to the fire and did not see the automobile before it was struck. The road was about 15 feet wide. There was a gradual ascent from the north line of the right of way to the railroad track, the track being about 4 feet above the level of the ground. The surface of the road was sandy, the sand varying in depth from 4 to 7 inches.

A witness for plaintiff testified that he observed Hedlund when he was about 500 feet north of the right of way, and that he was then driving towards the crossing at a speed of from 15 to 20 miles an hour.

A witness for defendant testified that he passed Hedlund in the forenoon of the day of the accident, and that he did not appear to be able to control his car. Another witness testified that he examined the car after the accident and that the brake was not in working order.

The train was running at a speed of about 35 miles an hour, and consisted of an engine, a baggage car, a smoker and a day coach. It was

over an hour behind its schedule. The automobile was hurled east of the road and north of the railroad.

1. Defendant contends that plaintiff failed to establish actionable negligence. The court instructed the jury in substance that they might return a verdict for plaintiff, if satisfied that defendant did not cause the engine whistle to be blown for the crossing as required by statute, or if it failed to have a proper lookout kept as the train approached the crossing.

We are of the opinion that the evidence justified the court in submitting the question of defendant's negligence to the jury and that its first contention cannot be sustained.

2. The important question is whether the evidence conclusively establishes the existence of contributory negligence on the part of Hedlund. In considering the evidence we are guided by well settled principles repeatedly stated by this court and summarized in Jenkins v. Minneapolis & St. L. R. Co. 124 Minn. 368, 145 N. W. 40, and Pogue v. Great Northern Ry. Co. 127 Minn. 79, 148 N. W. 889:

A railroad grade crossing is a place of danger and the track itself is a warning.

A traveler about to cross is charged with notice of the probability of approaching trains at all times and must look and listen, but need not necessarily halt when trains are neither seen nor heard. He must alertly use his sight and hearing to discover their approach.

Within reasonable limits he may act upon the assumption that due care will be exercised in the management of trains and in giving crossing signals.

When the evidence conclusively shows that a colliding train must have been visible from the point where the traveler should have looked and listened, a conclusive presumption arises, either that he failed to look and listen, or else heedlessly disregarded the knowledge thus obtained and negligently encountered obvious danger.

The failure to give the usual crossing signals may justify a traveler in relaxing somewhat in his vigilance, but does not excuse him from looking and listening before going upon the track.

Brown v. Milwaukee & St. P. Ry. Co. 22 Minn. 165; Schneider v. Northern Pac. Ry. Co. 81 Minn. 383, 84 N. W. 124; Wardner v. Great

Northern Ry. Co. 96 Minn. 382, 104 N. W. 1084; and Carlson v. Chicago & N. W. Ry. Co. 96 Minn. 504, 105 N. W. 555, are cases illustrating the application of these principles.

When Hedlund reached a point where he had an unobstructed view of the track, the train must have been very near the crossing. It will be presumed that he used due care for his own safety. If he did, he looked and listened. If he looked, he saw the train. If he saw it, he must have thought he could cross ahead of it. If this is what he attempted to do, it must be conceded that he was negligent and invited the disaster which befell him. Was there anything to prevent him from looking or which distracted his attention from the oncoming train? The sandy condition of the road is pointed to as a distracting circumstance. We cannot hold that, because a highway at a railroad crossing is sandy and the driver of an automobile is required to give more attention to the road than would be necessary if it were hard and smooth, he is excused from looking for trains with the same degree of care as though he were traveling on a good road. If the road is so bad that he cannot take his eyes off it to look, without stopping his car, it is his duty to stop. If he does not get an unobstructed view of the track until he is close to it, it is still more imperative that he should look before attempting to cross. It is contended, however, that when a person about to drive across a railroad is suddenly confronted with danger from a train approaching without signals, he has little time in which to collect his thoughts and decide what is best to do, and that when such a situation arises the familiar rule applies that if the negligence of the defendant unexpectedly puts the plaintiff in a position of great peril where he must act instantly in order to avert injury to himself, and, in the excitement caused by the sudden emergency in which he finds himself, the plaintiff does the wrong thing, he is not to be charged with contributory negligence. 2 Dunnell, Minn. Dig. § 7020. To support his contention plaintiff cites, among other cases, Beanstrom v. Northern Pac. R. Co. 46 Minn. 193, 48 N. W. 778; Hendrickson v. Great North. Ry. Co. 49 Minn. 245, 51 N. W. 1044, 16 L.R.A. 261, 32 Am. St. 540; Campbell v. Chicago G. W. Ry. Co. 108 Minn. 104, 121 N. W. 429, 28 L.R.A.(N.S.) 364, 133 Am. St. 417, and Simonson v. Minneapolis, St. P. & S. S. M. Ry. Co. 117 Minn. 243, 135 N. W. 745. These and many other crossing cases which have been

brought to this court involved injury or death to the driver of a team of horses. It is a matter of common observation that most horses are frightened by the near approach of trains. In their fright they are apt to get beyond the control of the driver and plunge directly in the path of the train. This furnishes a reason for holding that ordinarily the question of contributory negligence is one for the jury, where the driver of the team would have to approach close to the railroad track before he could get an unobstructed view and the train is coming at a high rate of speed and without giving the required warning signals. With an automobile the situation is quite different. The driver has complete control of its movements. If he is running at a reasonable rate of speed, he can bring it to a quick stop, especially on an upgrade on a sandy road such as was here present.

We cannot escape the conclusion that by his own lack of care for his safety, plaintiff's intestate directly contributed to the happening of the accident, and that it must be held that he was guilty of contribuory negligence as a matter of law.

The order appealed from is reversed and the case remanded with directions to the court below to enter judgment on the merits for defendants.