# CHARLES RINTALA v. DULUTH, WINNIPEG AND PACIFIC RAILWAY COMPANY.[1]

### June 13, 1924.

### No. 23,888.

**Contributory negligence, as matter of law, at railway crossing.**

1. The driver of an automobile, approaching a railway crossing under conditions obstructing his view of an approaching train, who omits all precautions for his own safety on the assumption that no train is due, is guilty of contributory negligence as a matter of law.

**Duty of chauffeur, when sight and hearing are imperfect.**

2. Under such circumstances, it is for the chauffeur to overcome temporarily, but long enough for his own safety, the impediments to sight and hearing caused by his own vehicle.

**When failure to stop is negligence as matter of law.**

3. If it is necessary to stop in order to overcome such impediments so as to permit the driver efficiently to use those senses for his own protection, it is his duty to stop his car for that purpose. Under such circumstances, failure to stop is negligence as a matter of law.

Action in the district court for St. Louis county to recover $2,-971.12. The case was tried before Freeman, J., who when plaintiff rested denied defendant's motions to dismiss the action and for a directed verdict and at the close of the testimony its motion for a directed verdict, and a jury which answered in the affirmative the questions: Were the engineer or firemen negligent in not giving signals in addition to the statutory signals as they approached the crossing? and, If the foregoing question is answered in the affirmative, was such negligence a direct and proximate cause of the accident? and returned a verdict for $1,945.50. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*H. V. Mercer, Johnson & Co.* and *Hector Baxter*, for appellant.
*Giblin & Manthey*, for respondent.

[1]Reported in 199 N. W. 562.

STONE, J.

Action for personal injuries and property damage sustained by plaintiff as the result of his attempt to cross defendant's track in his motor truck ahead of a freight train. There was a verdict for plaintiff followed by a motion by defendant for judgment notwithstanding or a new trial. From the order denying that motion this appeal is taken.

The accident occurred at the village of Orr in St. Louis county on November 23, 1922. The highway in question is a village street crossing the raailway from east to west. The tracks, two in number, one the main line and the other a spur, lie in a northerly and southerly direction and the street crosses them at right angles. A short distance south of the crossing is a passenger station. Just north of the latter and between it and the crossing the spur track switches off from the main line. It is on the west side of the latter. At the time of the accident, the spur track was occupied by two box cars and a gondola car, the latter being at the north end, farthest from the street. The southerly end of the string was somewhere from 12 to 21 feet from the crossing, the first figure being the estimate made by plaintiff at the trial and the latter a measurement made immediately after the accident. Plaintiff knew these cars were there; had been over the crossing just before; had "paid particular attention" to them as, in his own language, he "always paid when they were so close to the track." This string of three cars is the only thing, in the nature of an obstruction, which prevented plaintiff's having a full view of the approaching train for over 1,200 feet up the track· from the crossing.

The train was a logging train consisting of a large engine 15 cars of logs, 7 empties and a caboose. Shortly before it had pulled off the main line onto a "mill spur" about a quarter mile north of the station at Orr in order to give way to a local freight northbound.[1] That train had just stopped at Orr. As soon as it passed the mill spur, the logging train pulled back onto the main line and proceeded southward.

For some distance north of the crossing there is an upgrade. That is, the freight train came down grade to the crossing. About

[1][See correction on page 506.]

1,250 feet north of the crossing there is a cut, and the main line curves somewhat to the east, but from the crossing, even of the spur track, it is possible to see through this cut and some distance beyond.

The jury found specially that defendant gave the statutory bell and whistle signals as the train approached the crossing; that the train's speed, whatever it. may have been, was not a proximate cause of the accident, and that the engineer and fireman were not negligent in failing to keep a proper lookout as the train approached the crossing. The only alleged negligent act of defendant, found to be a proximate cause of the collision, was the failure to give warnings in addition to the statutory crossing signals. It is upon this special finding that the verdict rests. In other words, the jury was of the opinion (and otherwise their general verdict has no support), that, although defendant gave the signals by bell and whistle, required by statute, plaintiff might have been kept off the track if enough noise had been made by whistle and bell as the train approached.

The issue of contributory negligence is in the case, of course, and was resolved in plaintiff's favor by the jury. There is no reason for considering any other issue.

Plaintiff had come to the station to meet the northbound way freight. Shortly after it left the station (the evidence does not fix definitely the time which elapsed), plaintiff cranked his motor, got into his truck and proceeded over a short semi-circular route, first away from the station and tracks in a westerly direction, and then gradually turning to his right until, on the street approaching and near the crossing, he was headed east.

On the truck was a load of 1,500 to 2,000 pounds. A cab with swinging doors inclosed the driver's seat and the usual mechanism for control. As he approached the crossing, plaintiff was running the truck up a slight grade and in low gear. His speed was from one to two miles an hour and his brakes were in good condition.

It may have been, as he rounded the curve, that he would have seen, had he looked for it, the logging train approaching from the north. It might have been visible to his left of the freight cars

standing on the spur track. But that is a feature we pass, and assume that plaintiff, if he did look at any time while he was traversing the distance from the station around the curve to the crossing, could not have seen the train. In other words, we assume, conformably to plaintiff's claim, that the three cars, particularly the two box cars nearest him, obscured his vision northward to such an extent that he could not have seen the approaching train until he was far enough over the spur track to permit him to see up the main line, east of the box cars.

It was about 2 p. m. of a quiet afternoon. *There was nothing to distract plaintiff's attention as he made the semicircle from station to crossing.* He claims to have looked north but without seeing the logging train. He admits that if it had whistled, as the jury found that it did, he could have heard it. He says: "I think I would hear it, if it was blown; I could hear it before; I heard lots of times when it was coming behind them box cars; it was full of box cars when I did hear when they was blowing the whistle." The bell was ringing.

Plaintiff did not claim to have made any special effort to listen for a train approaching from either direction. As he got onto the crossing of the spur track, where he had an unobstructed view for at least 500 feet to the north, he did not look again in that direction, and without further precaution went onto the main line. His front wheels had reached the easterly rail before he was struck.

It is beyond successful contradiction that, allowing the three cars on the spur all possible effect as an obstruction to vision, plaintiff could have seen the approaching train, had he been looking for it, as he got onto the spur. Had he seen it then, he could have stopped his truck in time to avoid the collision. Of course, had he been at all alert, his sense of hearing should have warned him of the approaching train even though he did not see it.

Plaintiff's explanation of the collision is, in substance, that he had just seen the way freight go north, knew there was a passing track something like two miles up the line in that direction, and *assumed* that no train would come from the north so soon. He professes ignorance of the fact that the "mill spur," just a quarter of

a mile away, was ever used as a passing track. As he put it himself: "Well, I didn't expect any other train coming from the north so soon." "I was sure they never can pass (referring to the way freight and any train coming from the north), before they got to the passing track about two miles farther north." He did not know that there was a train already on the spur track a quarter of a mile away waiting the passage of the northbound freight in order to take the main line south.

The driver cannot shut himself in the cab of his truck, where the use of his senses of sight and hearing are much hindered by obstacles of his own imposition, and then blindly attempt to cross a railway without first using his eyes or his ears free from the hindrances he himself has imposed on their use, and, by whatever standard his conduct is judged, be considered in the exercise of due care. Certainly, that is a question as to which informed and rational minds, functioning judicially, will not differ.

This case is ruled by Anderson v. Great North. Ry. Co. 147 Minn. 118, 179 N. W. 687. McCarty v. Chicago, M. & St. P. Ry. Co. 154 Minn. 350, 191 N. W. 819, is not to be taken as authority to the contrary. Compare Chicago G. W. R. Co. v. Biwer, 266 Fed. 965. To arrive at the opposite result would require us to exonerate plaintiff from the charge of negligence because solely of his assumption that no train could come from the north so soon. The facts proved that assumption erroneous and show how impossible it is to allow a traveler, crossing a railway, any legal benefit of mere suppositions concerning railway operation. This case shows how wise is the rule that considers a railway crossing always a place of danger and the track itself always a warning of that danger.

Until the lawmaking power repeals the rule of contributory negligence, it is for the courts to enforce it as it stands. They are not at liberty to amend it in the interest of auto drivers, even though the latter now form a very numerous portion of the community. The rule is based upon the idea that, under all situations of danger, it is for every rational person to exercise due care for his own safety. Whether such care has been exercised is a question of fact, ordinarily for solution by a jury. But occasionally it is so

clear that a plaintiff has omitted an obvious precaution for his own safety, required by any measure of due care however lax, that it becomes the duty of the court to deny him recovery. This is such a case.

When it comes to such an issue between the engineer of a locomotive and a chauffeur, the common sense elements of the situation prevent any great indulgence of the latter. The locomotive and its train cannot dodge, nor stop very suddenly. Trains run ordinarily on schedule time and at a speed demanded by public interest. One thing the public will not permit, is any preventable slowing down of railway service. The people would severely rebuke a legislative enactment requiring trains to stop at highway crossings so as to prevent collisions with automobiles driven by indifferent and careless chauffeurs.

The argument of policy and common sense is all the other way. Nothing is more amenable to the control of its operator than an automobile. It is not confined to a pair of rails. It can be operated very slowly. When so operated, it can always be stopped easily and quickly, wherein it differs from a horse drawn vehicle. It is not run on schedule time. There is no public demand for its going at high speed over railway crossings. The public demand is distinctly the other way and to the effect that it is the automobile that must avoid the railway train rather than that the latter yield to the automobile.

Therefore, it would be an obvious denial of the proprieties of the situation, logical or otherwise, to relax the rules of due care in favor of an automobilist approaching a railroad crossing.

He, not the railway company, is responsible for the noise of the automobile, and for whatever other impediment it offers to the effectual exercise of the driver's senses of sight and hearing. If there are such impediments, it is for him to obviate them, temporarily and long enough to permit the full use of his senses of sight and hearing to discover the approach of a locomotive or train, if one is approaching.[1] If his vision is obstructed and the automobile is making so much noise that an approaching train cannot be heard, then, for his own safety, it is clearly the duty of the chauffeur

[1] [See explanation in last paragraph on page 507.]

to stop his machine as long as necessary for him to use, in reliable fashion, his sense of hearing. No standard of care can require less.

If the cab, or body or curtain of his car obstructs his view, then it is for him not only to stop his car, but to open a door or push aside a curtain, if such an act is necessary to enable him to use his vision in order to make sure that it is safe for him to cross. All these precautions are easily taken by the automobilist. Certainly, in the absence of peculiar conditions preventing or excusing their exercise, reasonable minds cannot disagree as to their being required by due care. In the absence of preventing or excusing circumstances, the failure to take any one of them is an act of negligence. It must be so held as a matter of law.

Due care in general is somewhat a matter of relativity. That idea explains the use, in the law of negligence, of the phrase "commensurate care." So, whether in a given case there was a duty to stop in order to look and listen, must depend upon the circumstances. Certainly, obstructions to vision, such as the cars on the spur track in this case, do not excuse lack of care. Rather, they require extra care. When there is added to serious obstruction of vision an equally serious impedimnet to hearing, imposed not by the railway company but by the autoist himself, the least that due care requires is that he take such steps as will enable him to use eyes and ears in the best fashion reasonably permitted by existing conditions. And, we repeat, so far as he is responsible for those conditions, it is for him to remove or overcome them.

If stopping is necessary, then he must stop, just as he must stop in order to look for approaching trains, "if the road is so bad that he cannot take his eyes off it to look, without stopping his car." Anderson v. Great N. Ry. Co. supra. In approaching a railway crossing, it is no more permissible for an autoist than for a pedestrian "to depend upon the evidence of one faculty alone" where unimpeded use of that one faculty is impossible, "and, where circumstances interfere with the use of either sense of sight or hearing, the demand is imperative that he avail himself of the other." Schneider v. Northern Pac. Ry. Co. 81 Minn. 383, 84 N. W. 124.

In no event is it permissible for the traveler to proceed over a railway crossing with little or no precaution for his own safety, relying on his mere assumption that no train is due. That is what happened here. There must be a reversal of the order appealed from with directions for judgment for defendant notwithstanding the verdict.

So ordered.

## ON PETITION FOR REHEARING.

On August 1, 1924, the following opinion was filed:

STONE, J.

Respondent's petition for rehearing is denied. However it makes two suggestions which deserve further comment.

Our statement of the facts is in error in a minor particular. It was the northbound passenger rather than the southbound logging train that took the mill spur. The circumstance is insignificant except that the logging train probably arrived at Orr somewhat sooner than if it had started from the spur instead of the main line.

The opinion does not emphasize, as it ought to have done, the importance of the precaution plaintiff claims to have taken while he stood on the depot platform, and before he started away with his truck, as to the track to the north. Plaintiff's argument concerning this circumstance was given careful consideration. In fact, it is the only thing about plaintiff's case which caused us to hesitate about the result. After attentive consideration, we have concluded that, as a matter of law, under the circumstances of this case, whatever plaintiff may have done on the depot platform, cannot take the place of the care required of him *afterwards* as he approached the crossing, and which, if exercised, would have prevented the accident.

Complaint is made also that we have not allowed due weight to plaintiff's own testimony concerning what he did just before he went onto the crossing. Of course, we have not attempted to weigh his

testimony, at least as a trier of fact would weigh it. What we have considered are the undisputed ultimate facts. They may be summarized in one sentence. Plaintiff was struck on a railway crossing under such circumstances as to indicate conclusively that, if he had looked and listened at all for a train approaching from the north, he would not have been struck.

Under that conclusion, inescapable as it is, what plaintiff testified to is inconclusive. What happened demonstrates that he did not "alertly use his sight and hearing to discover the approach of the train." Anderson v. Great N. Ry. Co. 147 Minn. 118, 179 N. W. 687.

Neither have we overlooked the testimony that the cab on plaintiff's truck was so equipped with windows that he had a clear view to the front and side. We also had in mind the claim that the truck was not making much noise as it slowly approached the crossing. But it is futile to deny that the body structure of any closed automobile, even a Ford truck, offers some obstruction to the vision of the chauffeur. It is equally futile to aver that a well-loaded truck is silent when being operated in low gear up an incline.

Again resorting, not to what anyone testified, but to the undeniable fact that the collision occurred, we consider it past successful contradiction either that plaintiff through absentmindedness was utterly indifferent to his situation, or, if he took any precaution at all for his own safety, the obstacles to the proper use of his senses of sight and hearing interposed by his own vehicle, deprived his precautions of their intended effect. This observation explains the presence in the opinion of the comment upon the duty of the driver of an automobile approaching a railway crossing to overcome such obstacles long enough to permit him to use efficiently his own senses for his own protection.