OLGA TURNER v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

September 25, 1925.

No. 24,735.

**Failure to stop vehicle before crossing railway not always contributory negligence.**

1.   A person, in attempting to cross a railroad track in a vehicle, is not necessarily guilty of contributory negligence if he fails to stop to look before so doing.

**Question of fact whether person killed was guilty of negligence, where box cars obstructed view and speed ordinance was violated.**

2.   Whether a person killed at a railroad crossing, which he attempted to make, was guilty of contributory negligence is held a question of fact, the evidence for plaintiff disclosing that the obstruc-

[1]Reported in 205 N. W. 213.

tion to his view of the oncoming locomotive was box cars set in by defendant on a side track so as to encroach on the crossing, and that the locomotive approached without warning and at much greater speed than permitted by an ordinance of the city.

1. See Railroads, 33 Cyc. p. 1011.
2. See Railroads, 33 Cyc. p. 1111.

----

1, 2. See notes in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702. 2 R. C. L. 1206; 1 R. C. L. Supp. 742; 4 R. C. L. Supp. 158.

Action in the district court for Ramsey county to recover for the death of plaintiff's intestate. The case was tried before R. D. O'Brien, J., who directed a verdict in favor of defendant. Plaintiff appealed from an order denying her motion for a new trial. Reversed.

*Samuel A. Anderson*, for appellant.
*John E. Palmer* and *John L. Erdall*, for respondent.

HOLT, J.

At about 3:30 p. m. on January 3, 1923, while driving his Ford automobile in an easterly direction over defendant's surface railroad crossing at Twenty-third avenue north, Minneapolis, Roy E. Turner was struck and killed by one of defendant's south-bound passenger trains. His administratrix brought this action to recover damages under the death statute and has appealed from a denial of her motion for a new trial after a directed verdict for defendant.

Twenty-third avenue runs east and west and crosses 7 railroad tracks. The 3 westerly tracks belong to the defendant and the 4 easterly to the Northern Pacific Railroad Company. The first track, as one approaches from the west, is known as the "industry track" and the next is defendant's south-bound main track, on which the train was running. It is 18.8 feet, measuring from center to center, between these two tracks. A picket fence about 7½ feet high is located on the north side of Twenty-third avenue and extends to a point about 6½ feet from the industry track. It incloses piles of

lumber and a sash and door factory. A lumber shed on the south side of Twenty-third avenue is near the industry track. Plaintiff introduced evidence from which the jury might find that at the time of the accident two box cars coupled together were on the industry track, that the south end of the southerly car extended into Twenty-third avenue from 6 to 8 feet, and that Turner's view of the tracks was obstructed by the cars. The exact distance from the southbound main to the point where he could first get an unobstructed view of the tracks, is in dispute.

Twenty-third avenue ends just east of the tracks. It leads to the shops of the Omaha Railroad Company, where many men are employed who cross the tracks daily on their way to and from work. There are 60 or 70 train movements over the crossing every 24 hours. No flagman is stationed there and there are no gates.

Turner was an employe of the Omaha Road and, at the time of the accident, was on his way to work, accompanied by a fellow employe named Madzey. Turner was an experienced driver and was familiar with the crossing.

The day was clear, with a light wind from the north. Turner was driving slowly, the roadway was not slippery, and he could have stopped his car in a space of 7 or 8 feet. Madzey estimated the speed of the car as they approached the crossing at 8 or 9 miles an hour, and testified that before the tracks were reached it was reduced to about 6 miles an hour. The speed of the train was variously estimated at 10, 12 and 15 miles an hour. The side curtains were not on the car. Madzey testified that he looked both ways before the industry track was reached and that he first saw the engine when it was only 6 or 8 feet away; that Turner also looked both ways when he was on or near the first track, and that just before the collision Turner got up and tried to get out over the south side of the car.

Turner had formerly worked at the Omaha shops, but had been employed elsewhere for 4 or 5 years, returning to the shops as an employe 10 or 15 days before the accident. While employed there he crossed the tracks twice every working day.

There was evidence from which the jury might find that no warning signal was given of the approach of the train and that it was running at a rate of speed in excess of that permitted by an ordinance of the city of Minneapolis.

The foregoing statement of facts is as favorable to plaintiff as the evidence warrants. It makes no mention of a great deal of contradictory evidence which the defendant introduced. For the purposes of this discussion we assume that the evidence made the issue as to defendant's negligence one for the determination of the jury. At the close of the evidence defendant's motion for a directed verdict was granted because the court was of the opinion that Turner was chargeable with contributory negligence as a matter of law. In granting the motion the court said that, if the box cars were where plaintiff's witnesses said they were, that "would put the deceased more on his guard to obey the stop, look and listen rule," and that "it appears conclusively that he was in his machine and driving less than the rate of 6, 7 miles per hour straight through at that rate without reducing his speed."

The only question we consider is whether the evidence shows conclusively that Turner was negligent.

Plaintiff's counsel asserts that the trial court erroneously assumed that there is a rule of law in Minnesota which makes it the duty of a traveler on a public highway, on coming to a railroad crossing, to stop, as well as look and listen, before he drives across.

A brief resume of what this court has said in other cases may help to clear up doubts on this subject:

In Shaber v. St. P. M. & M. Ry. Co. 28 Minn. 103, 9 N. W. 575, Gilfillan, C. J., said:

"With respect to the degree of care with which a person traveling on a highway should approach a railroad crossing, the court below was right in its instruction to the jury that it is not, in all cases, his duty to stop and listen to ascertain if a train may be coming; that his duty in that regard must depend on the circumstances of the case, of which the jury are to judge."

In Kelly v. St. P. M. & M. Ry. Co. 29 Minn. 1, 11 N. W. 67, Dickinson, J., said:

"Since, to one approaching a crossing like that in question, the danger is obvious and great, the law holds it negligence for him to do so without the vigilant exercise of his senses of sight and hearing. * * * He was not required to use every precaution which might have contributed to his safety, but only such as common prudence dictated. We cannot say, as a matter of law, that it was negligence not to have entirely stopped his team, * * * or that common prudence required him to get down from his wagon, and go forward on foot to look along the line of the track. * * * Such precaution is believed to be extraordinary, and to exceed the strict measure of common prudence."

In Beanstrom v. N. P. R. Co. 46 Minn. 193, 48 N. W. 778, Mitchell, J., said:

"While the decisions of this court are uniform to the effect that, under ordinary circumstances, it is the duty of a person to look and listen for approaching trains before venturing to cross a railroad, yet we have never held that having done so, he is bound, as a matter of law, to stop his team in order to ascertain if possibly a train is approaching, which he had not seen or heard. * * * It would only be under very peculiar and special circumstances that reasonable care would require so unusual a precaution. Having looked and listened for a distance of several hundred feet, and having checked up his horses to a walk for that purpose, on approaching the track, we think it was a question for the jury to say whether, under all the circumstances, plaintiff ought to have taken any additional precaution before attempting to make the crossing."

and in Newstrom v. St. P. & D. R. Co. 61 Minn. 78, 63 N. W. 253, that

"This court has endeavored to hold travelers, when about to go upon a railroad crossing, to the absolute duty of exercising their senses to the extent of their reasonable opportunities in looking and listening for approaching trains. But every case must depend, to

a certain extent, upon its own peculiar facts; and we have never laid down a hard and fast rule that, under all circumstances, they must secure a view of the track before attempting to cross, as, for example, by getting out of a vehicle and walking ahead of it in order to look up and down the track."

In Campbell v. C. G. W. Ry. Co. 108 Minn. 104, 121 N. W. 429, 28 L. R. A. (N. S.) 346, 133 Am. St. 417, Jaggard, J., said:

"Plaintiff was within the rule of law requiring one who goes near enough to a railroad track as to be in danger from any cause to exercise due care to avoid harm. That obligation must, however, vary with circumstances. It does not amount to a hard and fast requirement that such persons must stop, look and listen, and continue to look at all times and under all circumstances."

In Jenkins v. M. & St. L. R. Co. 124 Minn. 368, 145 N. W. 40, Philip E. Brown, J., said:

"A railway grade-crossing is a place of danger, and the track itself a warning. It must be approached circumspectly by persons purposing to cross, and they are charged with notice of probability of approaching trains at all times. If the crossing may properly be termed 'dangerous' and they are familiar with the surroundings, additional care is required. One about to drive a team across must look and listen for approaching trains, but need not necessarily halt when none are seen or heard. Yet he must alertly use his sight and hearing to discern their approach, and special and peculiar circumstances may require a stop."

In Brown v. C. & N. W. Ry. Co. 129 Minn. 347, 152 N. W. 729, Brown, C. J., said:

"The fact that decedent did not stop his horse before attempting to cross the track is not conclusive against him."

In Rintala v. D. W. & P. Ry. Co. 159 Minn. 499, 199 N. W. 562, Stone, J., said:

"Whether in a given case there was a duty to stop in order to look and listen, must depend upon the circumstances. Certainly, ob-

structions to vision, such as the cars on the spur track in this case, do not excuse lack of care. Rather they require extra care. When there is added to serious obstruction of vision an equally serious impediment to hearing, imposed not by the railway company but by the autoist himself, the least that due care requires is that he take such steps as will enable him to use eyes and ears in the best fashion reasonably permitted by existing conditions. * * * If stopping is necessary, then he must stop."

The statement in Akerson v. G. N. Ry. Co. 158 Minn. 369, 197 N. W. 842, that "a pedestrian or the driver of a vehicle is ordinarily guilty of contributory negligence if he violates the stop, look and listen rule" was not intended to modify or enlarge the scope of the rule announced in the earlier cases. Designating it as the stop, look and listen rule is merely a convenient way of referring to it.

The foregoing statement of the facts and of law applicable to persons about to cross railroad tracks, meets the approval of all the members of the court, but a majority of the court are of the opinion that plaintiff's contributory negligence does not appear as a matter of law, hence the trial court erred in directing a verdict in favor of defendant.

It must be admitted that the crossing was dangerous, and that Turner was familiar with it. He must also be held to have seen the position of the box cars on the side track, if they were where plaintiff's witnesses placed them, and to have realized that they made it impossible for him to see a train coming from the west until he passed them. As above stated the track on which the box cars were placed and the one on which the locomotive approached were close together, 18.8 feet from center to center. Taking into account the overhang of the cars and the locomotive, it is now apparent that when Turner, from the driver's seat, could see the locomotive, his car was either in position to be hit or within a foot or two of so being. Even considering that this was in broad daylight and that there is no evidence of distracting circumstances, we, nevertheless, have a case where the distance between danger and safety is to be measured by perhaps less than a foot and by time

of less than a second. It seems to us that when such is the situation created by defendant's negligence, as the jury could find, the question of contributory negligence of plaintiff's decedent is one of fact and not of law. Not only did defendant violate the speed ordinance at this dangerous crossing, but its negligence created a new danger by the placing of the box cars so as to unnecessarily obstruct the view of those about to use the crossing. It does not appear that Turner was ever before confronted with box cars in this position when about to cross. The negligence of the railroad company did not excuse Turner from using due care, but such negligence is a circumstance favorable to him and to be considered in determining his contributory negligence. Beulow v. C. R. I. & P. Ry. Co. supra. Turner is dead and the presumption is that he exercised due care. It is true that plaintiff proved by Mr. Madzey, the one riding with him, the circumstances of the collision, but Madzey's testimony is that Turner drove slowly and that he looked and listened. We do not think Madzey's testimony shows Turner's negligence conclusively within the rule of Carlson v. C. & N. W. Ry. Co. 96 Minn. 504, 105 N. W. 555, 4 L. R. A. (N. S.) 349, 113 Am. St. 655. This last case states the rule as to the point where a view can be had: "If that point be so far distant from the track as to enable the person injured or killed to know of the approaching train in due season to avoid the collision with it, he is guilty of contributory negligence as a matter of law and there is nothing for a jury to pass upon." In the present case the point of view was through the negligence of defendant made a negligible distance from the track. There was present in all the recent cases where contributory negligence has been held to appear as a matter of law, this opportunity, spoken of in the Carlson case, to see the approaching train a sufficient distance away to avoid a collision. We refer to Anderson v. G. N. Ry. Co. 147 Minn. 118, 179 N. W. 687; Jensen v. M. St. P. & S. St. M. Ry. Co. 154 Minn. 414, 191 N. W. 908; Rintala v. D. W. & P. Ry. Co. 159 Minn. 499, 199 N. W. 562; Buelow v. C. R. I. & P. Ry. Co. supra, page 52; Richter v. C. R. I. & P. Ry. Co. supra, page 284. In the Anderson case the crossing

was in the open country with an unobstructed view of the track for 1,320 feet at any point within 58 feet of the crossing, and practically the same was the situation in the Jensen case. In both the obstructions to a view of the trains were trees, obstructions that did not shift place. In the Rintala case the plaintiff was in an inclosed cab where he did not hear the warnings of the train which the jury found were given, and he also drove quite a distance after looking without further attempt to use his sight in the direction from which the train was coming before driving onto the crossing. In the Buelow case it was demonstrable from the comparative speed of his auto and the train that if he had looked with any degree of care when he said he did, 45 to 50 feet from the track, the train was in plain view. Moreover, the rumbling of the train when it came upon the bridge just before reaching the crossing must have notified him of its approach in time to stop the auto, had he been at all attentive to the dangers of a railroad crossing. In the Richter case, because of the embankment upon which the railroad track was laid, it was concluded that it clearly appeared that, at any time after Richter was within 100 feet of the track, he could have seen the train that struck him had he looked in that direction. Defendant makes much of Roth v. C. M. & St. P. Ry. Co. 185 Wis. 580, 201 N. W. 810, but the fact that one justice vigorously dissents from the proposition that contributory negligence appeared as a matter of law, tends to weaken that decision, and it may also be said that the instant case is distinguishable therefrom in that the jury might find that defendant here created the obstruction by negligently encroaching on the crossing with the box cars. We are of the opinion that the evidence made the issue of Turner's negligence one of fact and not one of law

The order is reversed.

STONE, J. (dissenting.)

I fail to discover any basis for distinguishing this from the Rintala and other cases wherein it was held that a chauffeur who failed to take the obviously necessary precaution and so got himself run into by a train, in clear daylight and the absence of distracting circumstances, was guilty of contributory negligence.

Consider again the position of an automobile driver approaching a railroad crossing. His paramount duty, his only one for the moment, is to exercise every reasonable precaution for the safety of himself and his passengers if any, not to mention the property and passengers of the railroad. If we assume daylight conditions and eliminate distracting circumstances, and we must for present purposes, how comes it that you may say, as the majority do, that rational minds, functioning judicially, can differ and any of them hold the driver innocent of negligence?

There were no distracting circumstances here. There was an obstruction to view which increased rather than decreased the necessity for precaution. So far we agree. We differ only on the question whether others may in fairness and reason disagree.

There is no rule requiring in every case the stopping of an automobile or other vehicle approaching a crossing. The so-called "stop, look and listen" rule simply demands alert and efficient exercise of the faculties and a stop only when the senses of sight and hearing cannot be effectively exercised otherwise. In the case of such visual obstruction as there was in this case, warned of the crossing, the ordinarily prudent driver will stop and delay his crossing until his sight or hearing or both assure that no train is approaching. How there can be unbiased or sensible denial of that statement or disagreement with it, I fail to understand. Yet it is upon the assumption of the possibility of such disagreement that this case has been decided by a bare majority of the court. The whole case has been thus accurately summarized by one of my associates:

"A person killed while driving over a railroad crossing on a clear day, who was familiar with the crossing, who, by reason of box cars standing on a side track, was unable to obtain a clear view of the tracks, seven in number, over which he was about to pass, who could have reduced the speed of his car or brought it to a stop before entering the zone of danger and who could have exercised his sense of sight effectively had he done so, is chargeable with contributory negligence if he proceeds over the crossing at a speed of six or seven miles an hour and reaches a point where he is in danger of being

struck by an approaching train before he has a clear view of the track on which it is approaching."

The argument made at the bar that such a holding as that in the Rintala case denies the right of trial by jury fails either to convince or scare me.  One obstacle to conviction is my notion that juries must function, not as partisans or the instruments of sympathy or passion, but judicially and under restraint of law.  Trial by jury is not a trial by 12 but by 15 individuals, all sworn to be governed by law.  To deprive the judge of all power (as I think we have in this case), is equivalent to dispensing with him.  Yet "to dispense with either," judge or jury, is to "impinge" on the right of trial by *judge and jury*, as known to the common law and protected by our constitutional guaranties, in support of which so much vociferous elocution is frequently expended upon the assumption that it is a right to trial by jury alone, unhindered by the appropriate legal restraints which function through the "power of direction and superintendence" vested in the judge.  Slocum v. N. Y. Life Ins. Co. 228 U. S. 364, 33 Sup. Ct. 523, 57 L. ed. 879, Ann. Cas. 1914D, 1029.  It is only by a convenient deletion that we have come to refer to it as trial by jury instead of trial by judge and jury.

The judge is more than a mere presiding officer and his duty, where there is no room for rational and unbiased disagreement concerning facts, is to make the law control.  In like fashion, courts of appeal have something more to do than review the procedural phases of a trial.  If a plain rule of law has been plainly violated, its duty is to correct the error.

Personally, I disapprove of contributory negligence as a bar to recovery but it is the law and simple judicial duty to enforce it. I think it clearly apparent in this case.  If it is not so considered, then obstruction of the vision of an automobilist, injured in daylight at a railroad crossing, is in effect made the means of reducing rather than increasing the care required of him.  That result, while not intended, seems obvious and because it seems to me contrary to the plain sense of the situation, I disapprove of it, and decline to join in any invitation to make this jurisdiction the favored place for the

trial of crossing accident cases, wherever they may arise and however plain it may be that due precaution on the part of the driver would have prevented casualty.

It relieves me of some embarrassment, an uncomfortable amount of which remains however, to align myself with the majority of the supreme court of Wisconsin and to concur in the view expressed in Roth v. C. M. & St. P. Ry. Co. 185 Wis. 580, 201 N. W. 810, that "in such a situation" of obstructed view "it becomes necessary, in order that his vision may be properly exercised" for the driver of the automobile "to slow up his speed or stop his machine. That is the care which the law imposes upon him. He cannot blindly proceed on the railroad track, where trains may be operated at any time, without having complied with these essential and necessary precautions."

Putting aside for the moment its legal aspect, how can the plain sense of the problem be better put than in the following language from Glick v. Cumberland & W. Elec. Ry. Co. 124 Md. 308, 92 Atl. 778.

"That a railroad track is a signal of danger, and that one attempting to cross it must, in order to avoid the imputation of negligence, first look and listen, and, if the view be obstructed, *stop*, look and listen for an approaching car, is a principle too firmly rooted   *   *   * to admit of any further question. It expresses the fixed standard of necessary caution and care, and has for its object the protection not only of those who travel on the public roads but also those who require the service of steam and electric cars."

See also Craig v. Pennsylvania R. Co. 243 Pa. St. 455, 90 Atl. 135, in which it was held that where the view of the track is obstructed it is the *duty* of the approaching automobilist to *stop* at a point where looking will be effective.

We are not troubled here with any border line circumstances. This was no blind or seldom used crossing; no spur or single track proposition. Here were seven tracks and obvious to one approaching them even for the first time were all the hazards of both main line and switching operations. So it is unusually plain that due

care required an efficient exercise of *both* sight and hearing. It is too clear for reasonable argument that in this case an efficient exercise of those senses by the driver would have prevented the collision. Obviously they could not have been efficiently exercised without a stop. Hence, the failure to stop was negligence. If there has been any explanation of how reasonable minds, approaching the question from any unbiased standpoint, can differ, or offer any reasonable basis for such difference, I fail to find it in the majority opinion.

True, there was to start with the presumption of due care. But presumptions have no place in the presence of undisputed facts and conclusions of fact. Both are so far present here as to put out of the case entirely the presumption of due care.