RICHARD JENSEN v. MINNEAPOLIS, ST. PAUL & SAULT
STE. MARIE RAILWAY COMPANY.[1]

February 2, 1923.

No. 23,212.

**Contributory negligence at railroad crossing.**

1. In an action for personal injuries received by plaintiff as the result of a collision at a railroad crossing between a team and wagon driven by him and a train of cars operated by defendant, it is *held* that the contributory negligence of plaintiff conclusively appears.

**Testimony incredible.**

2. The testimony of a person injured at a railroad crossing that before attempting to cross the track he looked up and down the same to ascertain whether it was clear, and saw no train approaching, cannot be accepted as credible in the face of the physical and indisputable fact that a train of cars was then in close proximity, moving rapidly toward him, and plainly to be seen by a glance in that direction.

Action in the district court for Ramsey county to recover $5,244.80 for injuries received at a crossing over defendant's track. The case was tried before Hanft, J., who at the close of the testimony granted defendant's motion for a directed verdict. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Kerr & Richardson*, for appellant.

*John E. Palmer* and *John L. Erdall*, for respondent.

BROWN, C. J.

Action for personal injuries claimed to have been suffered by plaintiff as a result of the alleged negligence of defendant. A verdict was directed for defendant on the trial and plaintiff appealed from an order denying a new trial.

There is no real or substantial controversy in the evidence. Plaintiff was injured as a result of a collision between a railroad passenger train operated by defendant and a team and wagon driven

[1]Reported in 191 N. W. 908.

by him at a road crossing over defendant's line of railroad on the outskirts of the city of St. Paul, at about 5:30 o'clock p. m. on February 5, 1921. The road over which plaintiff was driving is a quasi public way leading to and from the ice plant of the Peoples Ice Company, and is used by those having business relations with that company, and others having occasion to pass over the road at that point. The road extends across the railroad track east and west and approximately at right angles. The crossing is a dangerous one, particularly as approached from the east; a grove of trees adjoining the right of way at that point totally obstructs the view to the south until the line of the right of way, some 60 feet from the track, is reached and passed. From that outlook the railroad track, constructed upon a grade 3 feet high, is in full view in that direction for 1,600 feet or more, and a train of cars thence approaching may be plainly seen by a glance down the track.

Plaintiff, 37 years of age, had lived in the vicinity of the crossing a good many years; was perfectly familiar with the situation and surroundings and had driven over the same with his team several hundred times. He knew that it was a dangerous crossing, for, as he testified, he came near being caught there by a passing train on a prior occasion. He knew also that two trains passed over the crossing daily between the hours of 5 and 6 o'clock in the evening, though he did not know the precise hour of the accident. Yet he had the facts stated presently in mind and was on the lookout for trains as he approached the crossing. He was driving a team of young horses, and the animals were spirited and somewhat nervous in the presence of a train of cars or an automobile. He testified that, as he crossed the right of way line, he looked down the track to the south, the direction from which the train in question came, but saw no approaching train; he then looked at the north and found the track clear in that direction. The horses were going at a brisk walk, and when within about 15 feet of the track plaintiff again looked to the south and saw the train for the first time and almost upon him, or some 200 feet away; he urged his team forward, but too late to avoid being struck, the rear end of the wagon being caught.

It was dusk at the time but not dark; the train was lighted, with a brilliant headlight on the engine casting its rays a distance of some 800 feet or more, and running according to plaintiff's estimate around 50 miles an hour.

The question of the negligence of defendant, though not entirely free from doubt was by the evidence made an issue for the jury. But on the testimony of plaintiff, as just outlined, the conclusion of contributory negligence on his part quite conclusively appears, and a verdict was properly directed against him by the trial court. The facts bring the case within the rule applied in former decisions of the court. Raiolo v. Northern Pac. Ry. Co. 108 Minn. 431, 122 N. W. 489; Carlson v. Chicago & Northwestern Ry. Co. 96 Minn. 504, 105 N. W. 555, 4 L. R. A. (N. S.) 349, 113 Am. St. 655; Schneider v. Northern Pac. Ry. Co. 81 Minn. 383, 84 N. W. 124; Medcalf v. St. Paul City Ry. Co. 82 Minn. 18, 84 N. W. 633. The pertinent rule, often discussed and enlarged upon, is tersely stated by Judge Lees, speaking for the court, in Anderson v. Great Northern Ry. Co. 147 Minn. 118, 120, 179 N. W. 687, in the following language:

"When the evidence conclusively shows that a colliding train must have been visible from the point where the traveler should have looked and listened, a conclusive presumption arises, either that he failed to look and listen or else heedlessly disregarded the knowledge thus obtained and negligently encountered obvious danger."

The uncontroverted facts of the case at bar bring it within the rule. Plaintiff took the first opportunity at the right of way line to look for an approaching train, and testified that he saw no train coming. His testimony that he saw no train cannot, in the face of the physical facts disclosed, be accepted as expressing the fact or as even raising a question for the jury. The train at the moment was in his immediate presence, rapidly approaching, and collided with his wagon in less than 30 seconds after he claims to have so looked. Medcalf v. St. Paul City Ry. Co. 82 Minn. 18, 84 N. W. 633; Kemp v. Northern Pac. Ry. Co. 89 Minn. 139, 94 N. W. 439. The second look for an approaching train, just as he reached the crossing, came too late. When he looked at the right of way line he was in

a place of safety, but in an extremely dangerous position when he took observations the second time. He was solely responsible for the situation in which he then found himself.

Our conclusion therefore is in harmony with that of the learned trial judge and his order in the premises, denying a new trial, must be and is affirmed.