## E. C. JONES v. GREAT NORTHERN RAILWAY COMPANY.[1]

October 18, 1929.

No. 27,461.

*A. L. Janes, J. H. Mulally* and *Hall & Catlin,* for appellant.
*A. R. English* and *Somsen, Dempsey & Flor,* for respondent.

Dibell, J.

Action to recover for personal injuries sustained by the plaintiff at a railway crossing in a collision with a train of the defendant and for damages to his auto which he was driving. There was a verdict for the plaintiff. The defendant appeals from an order denying its alternative motion for judgment notwithstanding or a new trial.

The evidence, though in dispute, sustains the finding necessarily included in the verdict that the defendant failed to give the

[1]Reported in 227 N. W. 45.

crossing signals required by G. S. 1923 (2 Mason, 1927) § 10263, and that its failure was a proximate cause of the injury to the plaintiff and his auto. The failure resulted in liability, equivalent to that for negligence, in the absence of contributory negligence on the part of the plaintiff. 5 Dunnell, Minn. Dig. (2 ed.) § 8175. The defendant does not much contest the sufficiency of the evidence, and we do not review it.

■ Defendant's railroad passes through the village of Russell in Lyon county in a northeasterly and southwesterly direction and crosses Third street at substantially right angles. It is sufficiently accurate for our purpose to refer to the railroad as running east and west and Third street as running north and south. North of the railroad Third street intersects Main street, which runs east and west paralleling the railway tracks. Second street is the first street east and parallels Third street. Third street is 80 feet wide. At the time of the collision, about nine o'clock of the morning of August 23, 1928, the plaintiff drove his auto, a Ford sedan, with the front windows open, from the upper side of Main street at its intersection with Second street, where his place of business was located, westerly to Third street, and turned down Third street to the south. He was going 10, 15 or 20 miles an hour. His brakes were in condition. Three tracks of the defendant cross Third street. The northerly one, the industrial track, is substantially 55 or 60 feet south of the southerly line of Main street. Twenty-eight feet southerly from the center of the industrial track is the center of the passing track; and 16 feet southerly from the center of the passing track is the center of the main track.

The collision was with a freight train of 57 cars, an engine and caboose, making a length of somewhat less than a half mile, passing from the west to the east on the main track. On the west of Third street and at plaintiff's right as he turned into it from Main street were some obstructions to sight northerly of the industrial track— an office of an oil company, some tanks, and a shed. On the industrial track was an oil tank car 100 feet or so westerly of the west line of Third street. There were no cars on the tracks to the west except the oil tank car nor were there other obstructions.

The industry track had upon it a string of cars to the east approaching within 30 or 40 feet of the east line of Third street. There were no other obstructions to vision on or along the tracks either east or west.

When six or seven feet north of the industrial track the plaintiff could see west 563 feet on the main track. When in the center of Third street 43 feet northerly of the main track he could see a point on the main track 1,130 feet westerly of the center of Third street. From then on the range of his vision increased. There was nothing to obstruct it. He had need to watch to the east as he passed down Third street. Thirty or forty feet easterly of the east line of Third street there were cars on the industry track. Immediately on passing the industry track he had an unobstructed view to the east for two blocks or more. A momentary glance was all that was necessary to show that he was safe from the east. A like glance to the west would have shown the half-mile long train in close proximity. He did not look nor try to stop until he was on the passing track, or about there, within 16 feet or thereabouts of the center of the main track and within less than that distance of the hangover of the train which was then almost in front of him. He turned to the left but was struck or himself ran into the engine. Had he looked reasonably soon after he had safely passed the industrial track and before going onto the passing track, he would have seen the train quite far enough to the west so that he could avoid a collision. There was no obstruction either to his right or left. He knew the track was just ahead of him.

Third street is graveled. There were some depressions in it. There had been rain the night before, but at the time of the accident the evidence indicates that the sky was reasonably clear. As far as the plaintiff is able to say, he first saw the train when it was practically upon him, and then he put on his brakes and turned to the east in the direction the train was going. There is some claim that the auto skidded and some claim, which is denied, that the railroad had cleaned its tracks in the morning and thrown mud or dirt on Third street. The plaintiff had passed over the street after

the time it is claimed that this was done, or while it was going on, within a half hour before. We see nothing in this situation to relieve him of the charge of negligence.

The plaintiff was thoroughly familiar with the local situation. He had lived in the village for upwards of 20 years. His residence was on Third street south of the tracks. He passed from his place of business along Main and down Third to his home from day to day. Every railroad crossing is a warning of danger. As village crossings go, this was not a difficult one to pass with safety if only care was used. The plat and photographs make the situation clear. There were no other vehicles on the street. There was nothing interfering with traffic. There were no distracting circumstances. Atmospheric conditions were not bad. The most noticeable thing of all was the long train coming along in plain sight from the west. An auto, as we have remarked in other cases, is subject to quick control, and an accident is usually avoidable. With his auto under control and exercising his sense of sight, the plaintiff had no excuse for helping make a collision.

Under such facts it must be held that the plaintiff was guilty of contributory negligence within the standard of conduct fixed by our cases. Anderson v. G. N. Ry. Co. 147 Minn. 118, 179 N. W. 687; Jensen v. M. St. P. & S. S. M. Ry. Co. 154 Minn. 414, 191 N. W. 908; Rintala v. D. W. & P. Ry. Co. 159 Minn. 499, 199 N. W. 562; Bailey v. M. St. P. & S. S. M. Ry. Co. 166 Minn. 118, 207 N. W. 26, 560; Munson v. C. G. W. R. Co. 170 Minn. 513, 212 N. W. 946; Anton v. N. P. Ry. Co. 171 Minn. 355, 214 N. W. 661; 5 Dunnell, Minn. Dig. (2 ed.) § 8188. Our holdings do not encourage or tolerate the omission by a railway of the statutory signals. Neither do they permit a recovery, though the railway is negligent, if the auto driver fails to observe care as he approaches a track and negligently participates proximately in an avoidable accident. Here the plaintiff, if only he had looked to the west when his opportunity was so good and when there was no reason for neglecting to do so, would have avoided the accident. There should be judgment notwithstanding.

Order reversed.