**HAASE v. CHICAGO, M., ST. P. & P. R. CO.**
**Civil Action No. 295.**

District Court, D. Minnesota,
First Division.

March 16, 1948.

Davis, Michel, Yaeger & McGinley, by Philip B. Lush, all of Minneapolis, Minn., for plaintiff.

F. W. Root, C. O. Newcomb, and A. C. Erdall, all of Minneapolis Minn., for defendant.

DONOVAN, District Judge.

Plaintiff, 69 years of age, commenced an action for damages on account of personal injuries sustained by reason of an accident arising out of a collision of one of defendant's trains with a tractor he was driving across several tracks of defendant in the city of Winona. He attributes the accident to defendant's negligence. Denying it was negligent, defendant attributes the sole cause of the accident to be plaintiff's contributory negligence.

The undisputed facts disclose the site of the accident to be a railroad crossing made up of seven railroad tracks running in a general northerly and southerly direction as they intersect Franklin Street in said city. There were Griswold signals on opposite sides of the crossing, and at each

corner thereof. All of said signals when working normally flashed red on both sides of each signal, and a stop sign would turn against vehicular traffic upon the approach of a train on any of said tracks within a distance of 1370 feet from the crossing.

On September 28, 1945, at about 3:45 p. m., plaintiff was driving a tractor toward the crossing. The day was clear. He stopped 12 feet from the rail nearest him as he approached said crossing. The lights were not flashing, and assuming the track clear for vehicular traffic he started the tractor across the seven tracks. There were obstructions to his view on both sides of the track, but not of such character as to obstruct his view for some considerable distance along the track in the direction the train approached from. There were no permanent structures, such as buildings, between any of the seven tracks. He knew the crossing well, having previously crossed it on many occsions. As he started across he "looked west and east." He continued across "from north to south" and when "part way across" he "saw the lights blink" ahead of him on the south side of the tracks, at which time he said "the train was almost on top of me." He stepped on the accelerator and the first of two locomotives, pulling a train of 119 cars and a caboose, struck the left rear wheel of the tractor, causing serious and permanent disabling injuries to plaintiff. The train approached the crossing at a permissible rate of speed.

It may be assumed that the plaintiff had started over the tracks before the head end of the train reached the circuit that caused the red lights to flash and the stop sign to turn against approaching vehicular traffic. An eye witness, who was standing on a tank car between the crossing and the train as it approached, heard the exhaust of the locomotives and the sounding of the engine whistle or horn when the head locomotive was 100 yards from the crossing. The warning horn or whistle was described by this witness as "quite a blast." He further testified that the tank car was the only rolling stock to obstruct plaintiff's view along the tracks in the direction from whence the train approached. The tank car was about "a half block from the crossing and the signals came on [when the lead locomotive was] closer than [the] tank car [to] the crossing."

There was expert testimony for plaintiff indicating the Griswold signals were defective. There was testimony to the contrary for defendant indicating the signals worked as the train approached Franklin Street, and that they were tested after the accident and found free from defects.

The engineer on the lead locomotive testified that he saw the plaintiff approach the track the train was on, and that he saw plaintiff stop the tractor about 6 or 8 feet from said track; "then all at once he [plaintiff] started up to cross [when the lead engine] was a car length away from the crossing [or] about forty feet." The whistle was sounded; the locomotive bell was ringing. The engineer shut off steam and applied the brakes. The speed at the time of the accident was 20 to 25 miles per hour, which, with the ponderous length and weight of the train, caused it to continue on after the collision for about five minutes, coming to a stop with the lead engine just west of the passenger depot.

The case was submitted to a jury and a verdict for defendant returned.

Plaintiff moves for a new trial on the grounds that (1) the verdict is contrary to law; (2) the verdict is not justified by the evidence; (3) errors of law by reason of (a) the court's failure to charge on "the Minnesota Emergency Doctrine," and (b) permitting cross-examination "beyond the scope of direct examination."

■ I am satisfied that the verdict is justified by the evidence. There is no claim by plaintiff that the speed of the train was excessive. True, plaintiff's evidence tended to show the crossing signals did not warn him of the approach of the train until he was half way over the crossing, at which time the train was almost "upon him". He was in the open. There was no cab on the tractor. Had he looked in the direction from which the train approached, at almost any point after reaching the nearest rail of the first track he crossed, he could have seen the two giant locomotives laboring toward a collision with the tractor plaintiff controlled.

Plaintiff, to use his own words, had driven "lots of times [over the same seven tracks] two or three times a week for 25 years." He admits he "could have stopped quickly," but suggests that the train came upon him so quickly as to create an emergency and hence he decided to try to beat the train so as to clear the track before the lead engine reached the point intersected by the path of the tractor. His judgment was wrong and his decision to cross in the path of the ponderous locomotives created for him a rendezvous with death, or frightful injuries. He lived to describe the claimed emergency as justification for the conduct pursued by him.

Granting, for the purpose of considering the claim of emergency, that sudden and unappreciated danger confronted him with but a moment for decisive action, does such a dilemma, measured by the record of this case, make the defendant liable? Wherein is defendant's negligence the proximate cause of the accident?

At the time of this accident it was, and still is, the law that railroad trains have the right of way over vehicular traffic at grade crossings. Asklund v. Chicago G. W. R. Co., 176 Minn. 214, 223 N.W. 95; Hoyum v. Duluth W. & P. Ry. Co., 203 Minn. 35, 279 N.W. 729. The failure of defendant to warn of the approaching train was not a proximate cause of the accident because with the view plaintiff had in the direction the train came from, he could have seen the train in time to stop the tractor, if he had looked. Plaintiff claims no defect in vision; it was a clear day. Instead of stopping and remaining stopped, "he stepped on the gas instead of the brake." Under such circumstances, the lack of warning signals was not the proximate cause of the accident. Lundstrom v. Giacomo et al., 194 Minn. 624, 261 N.W. 465; Krtinich v. Duluth M. & I. R. Ry. Co., 206 Minn. 106, 287 N.W. 870. Defendant's failure to blink the lights did not relieve plaintiff of the duty to use due care. Atchison, T. & S. F. Ry. Co. v. McNulty, 8 Cir., 285 F. 97. The engineer of the lead engine had the right to assume the tractor would stop if a collision appeared imminent, and if it did, to remain stopped until the train passed over the crossing. It would be too late to stop a train of such ponderosity as the one that here collided with the tractor following a stop and a movement forward again, as plaintiff did here.

In support of the claimed emergency, plaintiff cites Mark v. St. Paul, M. & M. Ry. Co., 30 Minn. 493, 16 N.W. 367, 368. There, bewilderment caused by negligence of the defendant railway company, led plaintiff to put himself in a more dangerous position than might otherwise have been the case. Except for "the shouting by the brakeman and others [which] frightened and bewildered him, so that, for the moment, he was incapable of deliberating and choosing the safest course to pursue," he perhaps would not have met with injury. Such is not the situation in the case at bar. Plaintiff herein said he heard nothing. No whistle. No bell. But he did see the "blinking" red lights. There was no noise of a nearby planing mill or factory in the instant case, as was present in the Mark case. The present case is one where, as said by Mr. Justice Julius J. Olson, in Olson v. Duluth, M. & I. R. Ry. Co., 213 Minn. 106, 114, 5 N.W.2d 492, 496, "if there was any emergency it was clearly of his [plaintiff's] own making by failing to exercise the degree of care required of him as a matter of law." Anderson v. Davis, 151 Minn. 454, 187 N.W. 224; Anton v. Northern P. Ry. Co., 171 Minn. 355, 214 N.W. 661; Zobel v. Boutelle et al., 184 Minn. 172, 238 N.W. 49; Luce v. Great Northern Ry. Co., 203 Minn. 470, 281 N.W. 812.

The instruction plaintiff requested, and which the court refused to give, was really an inapplicable version of the last clear chance doctrine. Plaintiff, under the evidence of the instant case, could not be said to have "found himself in a position of apparent peril without any fault on his part", as stated in the rejected instruction.

Plaintiff's next and last contention is that the trial court permitted defendant's counsel to cross-examine plaintiff's witness Josept T. Dettle beyond the scope of the direct examination. The court is of the opinion that it kept within the rule laid down by the Eighth Circuit Court of Appeals in this respect. The right of cross-examination is not limited to the precise,

narrow scope of the questions asked on direct examination, but rather extends to the broader scope of subject matters touched upon in counsel's direct examination. Owl Creek Coal Co. v. Goleb, 8 Cir., 232 F. 445; Commercial State Bank v. Moore, 8 Cir., 227 F. 19. The witness was called to testify concerning the Griswold signals at the crossing in question. As indicated above, the functioning or nonfunctioning of said signals did not constitute an invitation to plaintiff to blindly cross over what he termed a dangerous crossing, nor excuse him from contributory negligence of such character as to constitute a causative factor tending to create the accident. Atchison, T. & S. F. Ry. Co. v. McNulty, supra.

The case went to the jury and was terminated in favor of defendant. I see no reason for setting the verdict aside. The motion for a new trial is denied. Plaintiff may have an exception.