# CHRIST J. LEE v. EMERSON MOLTER.[1]

February 11, 1949.

No. 34,805.

[1]Reported in 35 N. W. (2d) 801.

558

*Swanson Brothers* and *Day, Lundberg & Stokes,* for appellant.
*Dell, Rosengren & Rufer,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for personal injuries arising out of a collision between a railroad section gas motorcar on which plaintiff, the foreman of a section crew, was riding and which was traveling in a northwesterly direction on the Great Northern railway tracks, and a truck owned and operated by defendant, traveling in a westerly direction on a graveled county highway, at a point where the latter crosses such railway tracks some four miles northwest of Fergus Falls.

Defendant denied negligence and alleged that the contributory negligence of plaintiff and one Martin Kowalski, operator of the gas car and a member of the crew of which plaintiff was foreman, was the sole cause of the accident.

The trial court charged that defendant was guilty of negligence as a matter of law, and submitted to the jury the issues of proximate cause, contributory negligence, and damages. The jury returned a verdict for plaintiff for $12,571. Defendant appealed from

the judgment after denial of his alternative motion for judgment or a new trial.

Defendant's numerous assignments of error can be reduced to the four following principal contentions: (1) The trial court erred in holding defendant negligent as a matter of law; (2) plaintiff and his subordinate employe, whose negligence would be imputed to plaintiff, were guilty of contributory negligence as a matter of law; (3) the trial court erred in certain instructions to the jury hereinafter outlined and in the admission or exclusion of evidence hereinafter set forth; and (4) the verdict was excessive.

The accident occurred on October 30, 1945, at 11 a. m. It was a dry, cloudy day. At and near the scene of the accident, the railway tracks, on which the gas car was traveling in a northwesterly direction, extend in a southeast-northwest direction. The county road on which defendant was driving extends east and west, but as it approaches from the east to within approximately 500 feet of the tracks it turns slightly to the north a short distance, runs somewhat parallel to the tracks, and thereafter turns back to its general east-west direction as it crosses the tracks. It is comparatively level and is about ten feet below the railway track grade for some distance before it approaches the tracks, but ascends slightly to cross them. A grove of trees and underbrush located just east of the tracks about 300 feet southeast of the crossing obstructs the view of the tracks from the highway for a short distance, and vice versa.

Defendant, who was thoroughly familiar with the highway and crossing, testified that as he approached the tracks from the east he looked to his left until he was close to the crossing to determine whether a train was approaching; that thereafter he looked to his right and, without greatly slackening his speed, crossed the tracks at approximately 25 miles per hour; that he did not stop for either of the two railroad "stop" signs, located about 30 feet east of the center of the crossing, and at no time did he observe the gas car, although it was plainly within his view had he looked to the left.

Plaintiff rode near the right front of the gas car, facing somewhat east toward the highway. The operator of the gas car, Kowalski, was situated at the left rear thereof and faced toward the front, in the direction in which the car was traveling. Three other men were seated thereon in various locations.

Plaintiff testified that prior to the collision he was making a close inspection of the tracks, looking for broken angle bars, bolts, and rails, dips in the track, low spots, defective lines, crooked lines, and related matters, as he was required to do by virtue of his position; that he was likewise watching to determine whether anything had fallen from trains using the track and for any obstructions or objects on the track which would constitute a danger to trains; that after the car had passed the grove southeast of the tracks and had again come into the clear he looked down the road to his right for about three-quarters of a block, but saw nothing; that he then turned to look to his rear for an expected freight train coming from Fergus Falls, which was to pass the gas car and which required that plaintiff and his crew remove the car from the tracks in time for the freight to pass safely; and that while he was thus looking to his rear the collision took place.

Kowalski testified that after passing the grove of trees he released the motor so that the car was coasting; that when he was approximately 400 feet from the crossing he looked east toward the highway for approximately 400 feet and saw no truck, automobile, or other vehicle upon the road; that he knew of the existence of the stop signs on the approach to the crossing; that he was occupying a position facing generally to the left, and that it was necessary that he turn to the right and look over his shoulder to make such observation; that after he observed nothing on the highway within a reasonable distance he looked to his left for possible hazards; that thereafter he turned to his left and looked back to determine whether the expected freight train was in sight; that he then estimated such freight to be some distance back so that the gas car might proceed safely to the next crossing; that he then looked forward and for the first time saw defendant's truck directly in front of him

only four or five feet away; and that he attempted to apply his brakes, but was too close to the truck to avoid collision. It is undisputed that the truck was then traveling at least 25 miles per hour, while the gas car had slowed to some four or five miles per hour.

■ On the basis of this court's prior decisions, it is clear that the district court did not err in instructing the jury that defendant was negligent as a matter of law. M. S. A. 169.27 provides:

"The railroad and warehouse commission is hereby authorized to designate particularly dangerous highway grade crossings of railroads and to order stop signs thereat. When such stop signs are erected the driver of any vehicle shall stop within 50 feet, but not less than ten feet, from the nearest track of such grade crossing, and shall proceed only upon exercising due care."

Defendant approached this crossing, with which he was familiar, observed the warning signs, with which he was likewise familiar, and made no attempt whatever to comply with the statutory regulations insofar as reducing his speed or bringing his truck to a complete stop prior to passing over the railroad tracks. The gas motorcar obviously was in plain sight for some distance ahead of the crossing, and there was nothing in the evidence to indicate any extenuating circumstances or excuse for defendant's failure to exercise due care or to comply with the above statutory regulations. See, Haase v. C. M. St. P. & P. R. Co. (D. C.) 76 F. Supp. 393; Luce v. G. N. Ry. Co. 203 Minn. 470, 281 N. W. 812; Jones v. G. N. Ry. Co. 178 Minn. 322, 227 N. W. 45; Munson v. C. G. W. R. Co. 170 Minn. 513, 212 N. W. 946; Bailey v. M. St. P. & S. S. M. Ry. Co. 166 Minn. 118, 123, 207 N. W. 26, 560; Richter v. C. R. I. & P. Ry. Co. 164 Minn. 284, 204 N. W. 881; Jensen v. M. St. P. & S. S. M. Ry. Co. 154 Minn. 414, 191 N. W. 908; Anderson v. G. N. Ry. Co. 147 Minn. 118, 179 N. W. 687. The cited cases involved actions by automobile drivers against railroads, with the exception of the Jensen case, which involved a team and wagon, and the issue concerned their contributory negligence. The standard of care fixed therein, how-

ever, was the same as that applicable to the defendant here, and the principles therein stated directly support the trial court's action holding plaintiff guilty of negligence as a matter of law.

■ Defendant asserts, however, that under § 169.96 à violation of the foregoing statute would not constitute negligence as a matter of law, but only prima facie evidence of negligence. He relies upon § 169.96, which provides:

"In all civil actions, a violation of any of the provisions of this chapter, * * * shall not be negligence per se but shall be prima facie evidence of negligence only."

It is true that thereunder we have held that a violation of § 169.27 may not in itself constitute negligence as a matter of law. Bryant v. N. P. Ry. Co. 221 Minn. 577, 23 N. W. (2d) 174; Luce v. G. N. Ry. Co. 203 Minn. 470, 281 N. W. 812. It is to be noted, however, that in construing the statute we have also held that if evidence of the violation thereof is unopposed by other evidence tending to show a reasonable explanation which might excuse the failure to comply therewith, the violator may be negligent as a matter of law where there can be no dispute that such negligence was the proximate cause of the accident. See, Olson v. D. M. & I. R. Ry. Co. 213 Minn. 106, 113, 5 N. W. (2d) 492, 496, where we stated:

"* * * The *prima facie* provision is still a rule against the violator, not in his favor. It is a sword in the hands of his opponent, not a shield on his own arm. If the evidence of violation stands unopposed by evidence tending to show a reasonable ground for such violation, the court should direct a verdict against the violator. Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409. The defendant having proved only a violation of the statute connected as cause with the injury, and no more, shifted to plaintiff [who had failed to observe the statute] the burden of the evidence, as distinguished from the burden of proof. The burden on the plaintiff would then be to at least counterbalance the *prima facie* case made by the showing of violation. * * *

\* \* \* \* \*

"Properly interpreted, the language of the statute evinced an intention only to relieve the violator of the conclusive force of his violation and permit him to rebut it. To that extent only did the legislature intend to change the existing effect of the violation. To interpret into the language a purpose to make the jury judges of the law as well as the facts is beyond the scope of the language."

It is clear that the failure of defendant here to stop and look was the direct and proximate cause of the collision with the gas car on which plaintiff was riding. His admitted violation of the statute and its direct relationship to the collision impelled the court to hold him negligent as a matter of law. Cf. Olson v. Anderson, 224 Minn. 216, 28 N. W. (2d) 66; Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409; Luce v. G. N. Ry. Co. 203 Minn. 470, 281 N. W. 812, *supra*.

■ We are of the opinion that the issue of plaintiff's contributory negligence and that of his subordinate, Kowalski, was properly submitted to the jury. It is true, as defendant argues, that the right of way at a railroad crossing is not an absolute one in favor of the railroad, and that the duty still rests upon it to exercise reasonable care in passing over the same. Here, however, there was substantial evidence to indicate the exercise of reasonable care by both plaintiff and Kowalski. Due care, as well as safety regulations, required that they direct their observations to the tracks for obstructions or objects thereon; to their rear, to observe the approach of an expected freight train; ahead, to gauge their distance from the crossing; and to the right and left, as well as to the nearby highway.

Plaintiff had looked for vehicles approaching from his right. A jury might conclude that at the rate of speed defendant was then traveling he was not yet within plaintiff's range of vision at that time. Thereafter, plaintiff made other required observations: Of the highway to his left, of the tracks below, of the tracks ahead, and of the tracks to his rear for the approaching freight train. All such observations were part of his responsibilities, and we cannot

say that because he failed to keep watch only to the east for vehicles using the highway he was guilty of negligence as a matter of law. See, Petersen v. Ingersoll-Rand Co. 194 Wash. 584, 78 P. (2d) 1083; Panos v. Sourwine, 142 Wash. 15, 251 P. 883.

As for Kowalski, operator of the gas car, his testimony indicates that he, too, had responsibilities and obligations resting upon him in addition to his duty of observing motorists using the highway. He looked to his right along the highway and likewise failed to observe defendant's truck, which, as previously indicated, may have been beyond his range of vision at that time. We cannot say that in the performance of his additional duties and in the observance of his additional responsibilities he became guilty of negligence as a matter of law because he failed to look again to his rear. Obviously, it was for the jury to determine whether plaintiff and Kowalski exercised the care which men of ordinary prudence would have exercised under like circumstances.

■ Defendant further contends that the trial court erred in instructing the jury as follows:

"You are further charged that when a railroad gas car, such as was involved in the collision in this case, and a truck or motor vehicle are approaching a railroad crossing at approximately the same time, the gas car has the right-of-way; and it is the duty of the driver of the truck to yield the right-of-way to the gas car."

We do not feel there was error in this instruction. The obvious intent of the legislature in adopting § 169.27 was to impose upon operators of motor vehicles on highways the duty of stopping upon their approach to highway grade crossings. This would clearly imply that it was intended thereby that vehicles of a rail carrier would have the right of way at such points. Ordinarily, a motor vehicle on a highway has greater mobility in its operation than a vehicle upon railroad tracks, where the direction and operation are strictly confined to such tracks. We have repeatedly stated that it would impose an undue burden upon locomotive engineers to be compelled to bring their trains to reduced speed or to stop

at crossings when vehicles approach. We see no reason why the rule would not apply to employes of a railroad operating gas cars such as here involved, who, in their work, ordinarily are watching roadbeds and otherwise engaging in safety work for the protection of the public traveling by rail. We feel that the legislative enact-ment above referred to clearly indicates a legislative intent that users of rails have the right of way at crossings, and hence we con-clude that there was no error in the instruction complained of.

■ Defendant asserts that the trial court erred in instructing the jury as follows:

"There has been some talk or question regarding signals on the gas car. You are therefore charged that the gas car that was oper-ated by Martin Kowalski at the time of the accident was not equipped with a whistle, bell, horn, or any warning device. No such warning device was required by the statutes of the state of Minnesota."

We find no error in this instruction. There is no statute in the state requiring that a gas car be equipped with a whistle, bell, horn, or other warning device. It is true that the statutes impose upon a locomotive engineer the duty to sound a bell or whistle at crossings and, by implication, require that locomotives be equipped with a device to give such warnings, but this rule has never been extended to section cars such as the one upon which plaintiff was riding. We have not hitherto passed upon the question, but other states with similar statutes have uniformly adopted this rule. See, Cook v. Missouri Pac. Ry. Co. 169 Ark. 1211, 277 S. W. 345; Libby v. N. Y. N. H. & H. R. Co. 273 Mass. 522, 174 N. E. 171, 73 A. L. R. 101; Yazoo & M. V. R. Co. v. Day, 120 Miss. 296, 82 So. 148; Franklin & Pa. Ry. Co. v. Shoemaker, 156 Va. 619, 159 S. E. 100.

■ Defendant asserts that the trial court erred in refusing to admit in evidence certain printed rules and regulations of the Great Northern Railway Company governing its employes. We find no error in the court's ruling. Such rules are for the guidance of employes and do not represent rules or principles of negligence

applicable in cases of this kind. As stated in Gillespie v. G. N. Ry. Co. 127 Minn. 234, 237, 149 N. W. 302, 303:

"* * * The test of the liability of a railway company to persons on public highways, or crossing its tracks, is fixed by the law and not by the rules which the company chooses to prescribe for the conduct of its employees. At least twice it has been held error to receive in evidence the rules of the company for the guidance of its employees upon the issue of the liability of the company for an injury to a pedestrian ignorant of them. * * * it is apparent to one familiar with trial work that an inquiry whether the employees of the defendant were obeying its rules might easily confuse the jury in its investigation of the issues upon which liability depended."

█ Defendant asserts that the jury's verdict was excessive. This question was submitted to and passed upon by the trial court, who was in far better position to determine it than we are. We do not feel there was an abuse of discretion in denying defendant's motion on this issue. As stated in the trial court's memorandum:

"* * * The jury would have been justified in finding that the plaintiff had sustained severe injuries. His special damages totalled $571.00. Hearing on one ear was impaired. Because of his injuries his employer rejected him for further employment. He suffered a fracture of the skull with considerable bruising and possible laceration of the brain. He had been an able-bodied man before the accident and subsequent to the accident had been able to do little, if any, work. He also sustained an injury to his left arm in which he still suffered weakness at the time of the trial due possibly to the general effects of the brain injury. He apparently suffered a great deal of pain if the testimony of his attending physician is to be believed, and his convalescence was slow. His attending physician testified that he was totally and permanently disabled from performing any further work on the railroad. He apparently has no other training for any other work. Plaintiff hovered between life and death for a period of nineteen days which would indicate the seriousness of his injuries."

There are 27 assignments of error set forth in appellant's brief. It would be impractical to discuss each of them separately. Suffice to say that we have considered all of them carefully and find nothing in any of them which in our opinion would constitute reversible error.

Affirmed.