**CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellant,**

v.

**Lillian R. STRAND, as Trustee for the Heirs of Roy B. Strand, Decedent, Appellee.**

**No. 16823.**

United States Court of Appeals
Eighth Circuit.

March 7, 1962.

Richard A. Rohleder, St. Paul, Minn., made argument for appellant and Philip Stringer, St. Paul, Minn., was with him on the brief.

Roger T. Sahr, Minneapolis, Minn., made argument for appellee, and Edward B. McMenomy, Hastings, Minn., was with him on the brief.

Before SANBORN, MATTHES and BLACKMUN, Circuit Judges.

SANBORN, Circuit Judge.

 This is an appeal from a judgment for the plaintiff (appellee) based upon the verdict of a jury in a wrongful death action under § 573.02, Minn.Stat. Ann., which arose out of a railroad grade crossing accident in Dakota County, Minnesota. The action was commenced in the State court and removed by the defendant to the United States District Court on the ground of diversity of citizenship and amount in controversy. There is virtually no dispute as to the evidentiary facts and no need for stating them in complete detail. The applicable law is that of Minnesota.

Roy B. Strand on the night of February 6, 1960, was driving his automobile north on State Highway No. 36—also known as Cedar Avenue—on his way from his home in Farmington, Minnesota, to the nearby city of Minneapolis to call for his wife. The Highway is a two-lane paved highway, 24 feet wide, which runs north and south. It crosses at grade the tracks (a single mainline track and a spur track some 40 feet north of it) of the Chicago and North Western Railway Company, which run east and west. The crossing is known as the Nicols Station Crossing and is near the Minnesota River bottoms. Unfortunately, as Strand was approaching this crossing from the south on the Highway, a freight train of the Railway Company, consisting of a locomotive, 28 freight cars, and a caboose, was coming toward the crossing from the east on the mainline track. The train and the Strand automobile met on the crossing. Strand died as a result of the collision. His widow was appointed trustee for his heirs. Attributing the accident and its consequences to negligence on the part of the Railway Company, she brought this action to recover medical and burial expenses and damages resulting from the accident.

The plaintiff's action was based upon the claim that the crossing was extrahazardous and that the defendant was guilty of actionable negligence (1) in failing to give timely and adequate notice of the approach of its train by bell and whistle, and (2) in failing to maintain at the crossing a suitable and sufficient signal system—in addition to the conventional and required crossing warning signs—to notify those about to use the crossing of the approach of trains.

The defendant denied that the collision and its consequences were due to any negligence on its part. It asserted that Roy B. Strand was negligent, and that his negligence either caused or contributed to the collision and its results.

The issues of negligence and contributory negligence were tried to a jury. At the close of the plaintiff's evidence and at the close of all the evidence, the defendant moved for the direction of a verdict in its favor on the grounds (1) that there was no evidence of any negligence on its part, and (2) that, under the evidence, Roy B. Strand was guilty of contributory negligence as a matter of Minnesota law. The motion for a directed verdict was denied. The issues were submitted to the jury, which returned a verdict in favor of the plaintiff for $11,000. A motion for judgment notwithstanding the verdict or for a new trial was denied. This appeal followed.

The defendant asserts here, as it did at the trial, that there was an inadequate evidentiary basis for a finding by the jury that the defendant was guilty of any negligence, and that, under the evidence,

it clearly appeared as a matter of law that the accident was due, in whole or in part, to the negligence of Roy B. Strand. It is contended that the trial court erred in denying the defendant's motion for a directed verdict at the close of all the evidence at the trial, and also erred in denying the subsequent motion for judgment notwithstanding the verdict of the jury.

The sole question for decision by this Court is whether the trial court misconceived or misapplied the law of Minnesota in ruling that, under the evidence, the issues of negligence and contributory negligence were for the jury to determine.

The record on appeal contains photographs of the railroad crossing and its surroundings and a map drawn to scale and containing a "Vision Schedule."

There was no dearth of highway signs south of the railroad crossing indicating to drivers coming from that direction that they were about to encounter such a crossing. At the crossing there was the conventional crossbuck "Railroad Crossing" sign, with a red octagonal "Stop" sign and a "2 Tracks" sign attached. The record shows that Strand was thoroughly familiar with the crossing and that he and his wife frequently used the route he was following in driving from Farmington to Minneapolis. Mrs. Strand, who had driven to Minneapolis less than two hours earlier, testified that the night was cold, about 18 or 19 degrees above zero and "a little foggy," affecting visibility "a little."

The only eyewitness of the accident and the only member of the train crew who was in a position to know about it was Otto J. Reinecke, the locomotive engineer, who was sitting on the left side of the "road switcher" engine which was pulling the train involved in the collision. Reinecke testified that it was a clear night with some frost in the air; that the train was an extra freight made up in St. Paul and on its way west to St. James; that there was a whistling post a quarter of a mile east from the Nicols Station Crossing; that, when he reached the post, he commenced to sound the whistle and ring

the bell and continued to do so until the train reached the crossing; that the double headlights of the engine were on, as well as its "nub lights," "marker lights" and "ground light"; that when the train was possibly several hundred feet east of the whistling post he saw the headlights of one single automobile on the Highway; that it was about a quarter of a mile from the crossing and going approximately 40 miles an hour, which was also the speed of the train as it passed the whistling post; that the automobile appeared to slow down to possibly 20 or 25 miles an hour when it and the train each was about 300 feet from the crossing; that after the automobile slowed down it started to speed up again; that it was then about 200 feet from the crossing; that the train was about the same distance from it; that Reinecke "figured" the driver of the car was not going to stop; that he (Reinecke) put the brakes on the train in emergency; and that that was the utmost that he could do.

The record shows that Reinecke lost sight of the headlights he had been watching when the car to which they were attached passed west of the Nicols Depot [Station], a structure 48.7 feet long (east to west) and 16.5 feet wide (north to south) located 42.5 feet east of the paved highway and extending lengthwise along and 11.7 feet south of the southernmost rail of the main track; that Reinecke saw the car, with which his train collided, a few seconds before the car reached the track and collided with the engine; that the speed of the car, which may have been 40 miles an hour, indicated to Reinecke that it had not stopped for the crossing.

Other members of the train crew, none of whom saw the collision, testified largely in corroboration of the evidence given by Reinecke, the engineer, as to visibility, lights on the engine, sounding of the whistle, ringing of the bell, and application of the brakes in emergency.

Ralph A. Gadbaw, a carpenter who lived close to the crossing, testified that he heard the train whistle and the brakes

squeak prior to the accident; that after the accident he walked down to where the car was located; that the weather was clear and crisp. On cross-examination, he testified that during the year he had lived near the crossing there had been no prior train accident there.

Silas K. Palmer, a "landscaper" who lived some 300 feet northwest of the Nicols Station, testified that on the night in question he saw the headlights of the train before it reached the crossing, and heard it whistle; that the weather was "pretty clear" and that he could see the train from his window about 900 feet away.

There is no evidence in the record to sustain a finding or an inference that in the operation of its train the defendant was guilty of any negligence whatsoever.

■■ The contention that this crossing was extrahazardous and that the jury could find that ordinary care required that the defendant install signal devices at the crossing to warn drivers on the Highway, coming from the south, of the approach of trains coming from the east, is based mainly upon the theory that the Nicols Depot dangerously obstructs the view of automobile drivers who comply with § 169.27 M.S.A. That statute provides that at a crossing such as that in suit " * * * the driver of any vehicle shall stop within 50 feet, but not less than ten feet, from the nearest track of such grade crossing, and shall proceed only upon exercising due care." It is argued on behalf of the plaintiff that the jury could reasonably infer that the automobile headlights that Reinecke, the engineer, was watching and which caused him to apply the emergency brakes on the train, were not the headlights of the Strand car and that the Strand car was at a standstill west of the Depot and out of sight of the engineer, and that Strand ran into the train from a standing start because the Depot cut off the sight and sound of the train. While the plaintiff is entitled to the benefit of all reasonable inferences that can be drawn from the evidence in her favor, she is not entitled to the benefit of unreasonable inferences. Russell v. Turner, 8 Cir., 148 F.2d 562, 565. There was uncontradicted evidence that no car other than that of Roy Strand was on the Highway south of the crossing at or about the time of the collision.

Apparently a somewhat similar contention was advanced in Luce v. Great Northern Ry. Co., 203 Minn. 470, 472, 281 N.W. 812, 813, in which the Minnesota Supreme Court said: " * * * if deceased halted in obedience to stop sign and statute, he proceeded forthwith in unexplained oblivion to his position and its obvious and impending danger."

■ If Strand had in fact brought his car to a stop west of the Depot, in close proximity to the crossing while the train was bearing down upon it with headlights gleaming, whistle sounding, bell ringing, and all the other noises which attend a freight train proceeding with brakes set in emergency, it is not conceivable that this accident could have occurred. We are not overlooking the statutory presumption of due care on the part of a decedent, M.S.A. § 602.04. That does not relieve a trial court of the responsibility of directing a verdict or granting judgment n. o. v. to a party when, under the evidence and the applicable law, no other result is possible. Roeck v. Halvorson, 254 Minn. 394, 398–400, 95 N.W.2d 172, 176–177.

■ In Minnesota it is the duty of the drivers of vehicles to yield the right of way at highway grade crossings of railroads to the users of the rails. Lee v. Molter, 227 Minn. 557, 564–565, 35 N.W. 2d 801, 805. It is settled law in Minnesota that

" * * * If the driver of the automobile involved in a collision with a train at a railroad crossing has an adequate opportunity under the surrounding circumstances to know of and see the approaching train in time to avoid the collision, he is guilty of contributory negligence as a matter of law. Carlson

v. Chicago & N. W. Ry. Co., 96 Minn. 504, 105 N.W. 555, 4 L.R.A.,N.S., 349, 113 Am.St.Rep. 655; Turner v. Minneapolis, St. P. & S. S. M. Ry. Co., 164 Minn. 335, 205 N.W. 213."

Dahlquist v. Minneapolis & St. L. Ry. Co., 230 Minn. 203, 205, 41 N.W.2d 587, 588–589; Chicago, St. Paul, Minneapolis & Omaha Ry. Co. v. Heyda, 8 Cir., 191 F. 2d 944, 948; Rogge v. Great Northern Ry. Co., 233 Minn. 255, 260, 47 N.W.2d 475, 478–479; Hicks v. Northern Pac. Ry. Co., 239 Minn. 373, 375–376, 58 N.W. 2d 750, 751–752, citing the Heyda case; Pirner v. Northern Pac. Ry. Co., 258 Minn. 379, 385, 104 N.W.2d 175, 179.

We are convinced that if the Supreme Court of Minnesota were called upon to decide this case, it would hold that Roy B. Strand had an adequate opportunity to see the train with which his car collided, in time to avoid the collision, and that, in failing to avoid it, he was, as a matter of Minnesota law, guilty of negligence which directly caused or contributed to the collision and his death.

We find it unnecessary to decide whether the Supreme Court of Minnesota would also hold that there was an inadequate evidentiary basis for a finding that the crossing was extrahazardous because of the presence of the Nicols Depot, which did not seriously obstruct the view, to the east, of a driver approaching the crossing from the south until he was within some 50 feet of the track, nor deprive him of an adequate opportunity to learn of the approach of a train from the east in time to avoid a collision. But see and compare, Chicago, M., St. P. & P. R. Co. v. Slowik, 8 Cir., 184 F.2d 920, 923; Roth v. Swanson, 8 Cir., 145 F.2d 262, 267; Olson v. Duluth, Missabe & Iron Range Ry. Co., 213 Minn. 106, 5 N.W.2d 492; and Koop v. Great Northern Ry. Co., 224 Minn. 286, 28 N.W.2d 687.

Our conclusion is that the misfortune suffered by the heirs of Roy B. Strand as the result of his death is not one for which, under Minnesota law, the defendant can be held liable, and that the trial court should have granted the defendant's motion for a directed verdict.

The judgment appealed from is reversed, and the case is remanded with directions to enter a judgment of dismissal for the defendant.